**Douglas Wayne PERRY, Janise White, and Raul Quintero, Petitioners,**

v.

**S.N. and S.N., individually and a/n/f of B.N., a minor, and a/n/f of K.N., a minor, Respondents.**

No. 97–0573.

Supreme Court of Texas.

Argued Jan. 7, 1998.

Decided July 3, 1998.

302

Gary E. Zausmer, Jeffrey Jury, Tom Tourtellotte, Austin, for Petitioners.

Greg Reed, Lionel J. Roach, Austin, for Respondents.

PHILLIPS, Chief Justice, delivered the opinion of the Court.

Respondents' motion for rehearing is overruled. Our opinion of May 8, 1998, is withdrawn and the following is substituted in its place.

This is a suit for injuries arising out of the abuse of children at a day care center. Plaintiffs filed suit individually and as next friends of their two children, alleging that defendants witnessed the abuse and failed to report it to the police or child welfare officials. The sole issue before us is whether plaintiffs may maintain a cause of action for negligence per se based on the Family Code, which requires any person having cause to believe a child is being abused to report the abuse to state authorities and makes the knowing failure to do so a misdemeanor. *See* TEX. FAM.CODE §§ 261.101(a), 261.109 (formerly TEX. FAM.CODE §§ 34.01, 34.07). The trial court granted summary judgment for defendants, but the court of appeals reversed and remanded plaintiffs' negligence per se and gross negligence claims for trial. *Nash v. Perry*, 944 S.W.2d 728 (Tex.App.—Austin 1997). We reverse the judgment of the court of appeals and render judgment that plaintiffs take nothing. Because plaintiffs did not preserve their common law negligence claims, we do not decide whether there should be a common law duty to report child abuse in some circumstances.

B.N. and K.N. attended a day care center operated by Francis Keller and her husband Daniel Keller from March 25, 1991, to August 28, 1991. Their parents, S.N. and S.N., allege that during that period, Daniel Keller regularly abused B.N. and K.N. and other children at the center both physically and sexually. Mr. and Mrs. N. brought suit against the Kellers and three of the Kellers' friends, Douglas Perry, Janise White, and Raul Quintero. Plaintiffs claim that Francis Keller confided in White at an unspecified time that Daniel Keller had "abusive habits toward children." They further allege that on one occasion in August 1991, while visiting the Kellers, defendants Perry, White, and Quintero all saw Daniel Keller bring a number of children out of the day care center into the Kellers' adjoining home and sexually

abuse them. The record does not indicate whether B.N. and K.N. were among these children. According to plaintiffs, Perry, White, and Quintero did not attempt to stop Daniel Keller from abusing the children or report his crimes to the police or child welfare authorities.

■ Plaintiffs' brief filed in this Court alleges additional facts that were not contained in their trial court pleadings. They now assert that Perry pleaded guilty to indecency with a child by contact and that White and Quintero were indicted but not prosecuted for sex offenses involving the children at the day care center. Plaintiffs' trial court petition, however, did not allege that Perry, White, or Quintero participated in abusing B.N. and K.N. or other children. We may not consider factual assertions that appear solely in the appellate briefs and not before the trial court. *See Estate of Arrington v. Fields*, 578 S.W.2d 173, 183 (Tex.Civ.App.— Tyler 1979, writ ref'd n.r.e.).

Instead, Mr. and Mrs. N. alleged only that Perry, White, and Quintero were negligent per se because they violated a statute requiring any person who "has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse" to file a report with the police or the Department of Protective and Regulatory Services. TEX. FAM.CODE § 261.109(a). Plaintiffs also asserted gross negligence and common law negligence claims. They claimed that Perry, White, and Quintero's failure to report the abuse proximately caused them harm by permitting the day care center to remain open, thus enabling Daniel Keller to continue abusing the children at the center. They sought damages for pain, mental anguish, and medical expenses, as well as loss of income when they could not work outside the home because of B.N. and K.N.'s injuries.

■ Perry, White, and Quintero moved for summary judgment on the sole ground that plaintiffs failed to state a cause of action. None of the parties presented any summary judgment evidence. A court may not grant summary judgment for failure to state a cause of action without first giving the plaintiff an opportunity to amend the pleadings.

*See Pietila v. Crites*, 851 S.W.2d 185, 186 n. 2 (Tex.1993). Before any defendant moved for summary judgment, however, White filed special exceptions arguing that plaintiffs had not stated a cause of action, and plaintiffs subsequently amended their petition. Although it appears from the record that Perry and Quintero did not file special exceptions, their motions for summary judgment were based solely on the grounds argued in White's special exceptions. Thus, Mr. and Mrs. N. had a fair opportunity to correct any deficiency in their pleadings.

■ The trial court granted Perry, White, and Quintero's motions for summary judgment and severed plaintiffs' claims against those three defendants from their suit against the Kellers, which is not before us. Because defendants' motions for summary judgment argued only that plaintiffs failed to state a cognizable claim, the trial court's judgment can be upheld, if at all, only on that ground. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). When the ground for the trial court's decision is that plaintiffs failed to state a cause of action, we must take the allegations in the pleadings as true in determining whether a cause of action exists. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 309 (Tex.1987).

The court of appeals affirmed the summary judgment on plaintiffs' common law negligence claims but reversed and remanded for trial on the issues of negligence per se and gross negligence, holding that a violation of the Family Code's child abuse reporting requirement is negligence per se. 944 S.W.2d 728. Mr. and Mrs. N. have not appealed the court of appeals' judgment affirming the summary judgment against them on common law negligence. Therefore, the question of whether Texas should impose a new common law duty to report child abuse on the facts of this case is not before us. *See generally Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 291–92 (Tex.1996); *Butcher v. Scott*, 906 S.W.2d 14, 15–16 (Tex. 1995) (both refusing to recognize a common law duty to report abuse under the circumstances of those cases); *Greater Houston*

*Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990) (setting out factors for deciding whether a common law duty should exist). We granted defendants' application for writ of error to resolve the conflict between the court of appeals' decision remanding the negligence per se claims for trial and the decisions of three other courts of appeals declining to permit tort liability for violation of the statutory child abuse reporting requirement. *See Marshall v. First Baptist Church*, 949 S.W.2d 504, 508 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Childers v. A.S.*, 909 S.W.2d 282, 289–90 (Tex.App.—Fort Worth 1995, no writ); *Scott v. Butcher*, 906 S.W.2d 16, 20–21 (Tex.App.—Tyler 1994), *rev'd on other grounds*, 906 S.W.2d 14 (Tex.1995).[1]

■ "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993). The court of appeals found a duty in the following mandatory child abuse reporting provisions of the Texas Family Code:

> A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.

TEX. FAM.CODE § 261.101(a).[2]

> (a) A person commits an offense if the person has cause to believe that a child's

physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter.

> (b) An offense under this section is a Class B misdemeanor.

*Id.* § 261.109.[3] The court concluded that these provisions create a "statutory duty" to report child abuse, and that a violation of this duty is negligence per se. *See* 944 S.W.2d at 730.

■ All persons have a duty to obey the criminal law in the sense that they may be prosecuted for not doing so, but this is not equivalent to a duty in tort. *See, e.g., Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex.1997) (statute making it a crime to furnish alcohol to persons under age 21 did not impose a tort duty on social hosts). "It is well-established that the mere fact that the Legislature adopts a criminal statute does not mean that this court must accept it as a standard for civil liability." *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). "The considerations which warrant imposing tort liability are not identical with those which warrant criminal conviction," Morris, *The Role of Criminal Statutes in Negligence Actions*, 49 COLUM. L.REV. 21, 22–23 (1949), and we will not apply the doctrine of negligence per se if the criminal statute does not provide an appropriate basis for civil liability.[4] *See Smith*, 940 S.W.2d at

1. This Court was unable to address the negligence per se issue in *Butcher* for jurisdictional reasons. *See Butcher v. Scott*, 906 S.W.2d 14, 16 (Tex.1995). This case thus presents our first opportunity to consider this question.

2. This mandatory reporting statute was enacted in 1971. *See* Act of May 24, 1971, 62d Leg., R.S., ch. 902, § 1, 1971 Tex. Gen. Laws 2790, 2791. Prior to that time, Texas did not require the reporting of child abuse, although there were statutes granting immunity from suit to doctors and other professionals who chose to report cases of suspected abuse. *See* Act of April 26, 1965, 59th Leg., R.S., ch. 117, 1965 Tex. Gen. Laws 277 (physicians); Act of May 5, 1969, 61st Leg., R.S., ch. 219, 1969 Tex. Gen. Laws 637 (other professionals).

The version of this provision in force at the time of the events in this case read "has been *or may be* adversely affected." *See* 944 S.W.2d at 729 (quoting former TEX. FAM.CODE § 34.01(a))

(emphasis added). The Legislature deleted the italicized language in 1997. *See* Act of Sept. 1, 1997, 75th Leg., R.S., ch. 1022, § 65, 1997 Tex. Gen. Laws 3733, 3760. However, the phrase "or may be" remains in the current version of § 261.109(a).

3. This provision criminalizing the failure to report was added in 1973. *See* Act of May 17, 1973, 63d Leg., R.S., ch. 398, § 1, 1973 Tex. Gen. Laws 881.

4. At times, our opinions have included language suggesting that any statutory violation is automatically negligence per se. *See, e.g., Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973) (stating that to prove negligence per se, one must prove the unexcused violation of a penal standard). Yet these same opinions recognize the Restatement of Torts as the law of Texas on negligence per se, and the Restatement expressly states that the adoption of criminal statutes into tort law is a matter of judicial discre-

607; *Rudes v. Gottschalk,* 159 Tex. 552, 324 S.W.2d 201, 204–05 (1959); *Phoenix Refining Co. v. Powell,* 251 S.W.2d 892, 896 (Tex.Civ. App.—San Antonio 1952, writ ref'd n.r.e.).

■ Before we begin our analysis of whether section 261.109 of the Family Code is an appropriate basis for tort liability, we emphasize that we must look beyond the facts of this particular case to consider the full reach of the statute. We do not decide today whether a statute criminalizing only the type of egregious behavior with which these defendants are charged—the failure of eyewitnesses to report the sexual molestation of preschool children—would be an appropriate basis for a tort action. That is not the statute the Legislature passed. Rather, the issue before us is whether it is appropriate to impose tort liability on any and every person who "has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report." TEX. FAM.CODE § 261.109(a). *Cf.* Leonard, *The Application of Criminal Legislation to Negligence Cases: A Reexamination,* 23 SANTA CLARA L.REV. 427, 457–66 (1983) (contrasting the rigidity of statutory standards with the flexibility of case-by-case common law determinations of duty and breach).

■ The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plain-tiff's injury is of a type that the statute was designed to prevent. *See Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex.1978); *East Tex. Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613, 615 (1949); *Missouri, K & T. Ry. v. Saunders,* 101 Tex. 255, 106 S.W. 321, 321–23 (1908); RESTATEMENT (SECOND) OF TORTS §§ 286, 288. Texas's first mandatory child abuse reporting statute, from which Family Code section 261.101(a) is derived, stated that "[t]he purpose of this Act is to protect children who[ ] . . . are adversely affected by abuse or neglect." Act of May 24, 1971, 62d Leg., R.S., ch. 902, § 1, 1971 Tex. Gen. Laws 2790. Similarly, the current Family Code provision governing the investigation of reports of child abuse states that "[t]he primary purpose of the investigation shall be the protection of the child." TEX. FAM.CODE § 261.301(d).

■ B.N. and K.N. are within the class of persons whom the child abuse reporting statute was meant to protect, and they suffered the kind of injury that the Legislature intended the statute to prevent.[5] But this does not end our inquiry. *See Praesel v. Johnson,* 967 S.W.2d 391, 395 (Tex.1998). The Court must still determine whether it is appropriate to impose tort liability for violations of the statute. *See Smith,* 940 S.W.2d at 607–08. This determination is informed by a number of factors, some discussed by the court of appeals in this case and others derived from past negligence per se decisions of Texas courts and from scholarly analyses.

---

tion: "The correct rule is . . .: 'The unexcused violation of a legislative enactment or an administrative regulation *which is adopted by the court as defining the standard of conduct of the reasonable man,* is negligence in itself.'" *Southern Pac.,* 493 S.W.2d at 497 (emphasis added)(quoting RESTATEMENT (SECOND) OF TORTS § 288B (1965)); *see also* RESTATEMENT (SECOND) OF TORTS § 286 (1965) ("The court *may* adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment . . . .") (emphasis added); *id.* cmt. d ("Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action.").

5. A few courts in other jurisdictions have interpreted mandatory reporting statutes as intended to protect only the specific child the defendant suspects is being abused, not other potential victims of the same abuser. *See Curran v. Walsh*

*Jesuit High School,* 99 Ohio App.3d 696, 651 N.E.2d 1028, 1030–31 (1995); *Marcelletti v. Bathani,* 198 Mich.App. 655, 500 N.W.2d 124, 127 (1993). It is unclear from the pleadings whether B.N. and K.N. were among the children whom defendants saw being abused. But whether or not *Curran* and *Marcelletti's* analysis applies to the Texas reporting statute, B.N. and K.N. are within the protected class on the facts of this case. According to the pleadings, defendants saw Daniel Keller take some of the children enrolled in the day care center out of the center into an adjoining room of the Kellers' home and sexually abuse them. This gave defendants "cause to believe" that the "physical or mental health or welfare" of all the children attending the day care center—not only the particular children they saw being abused on that occasion—"may be adversely affected by abuse or neglect." *See* TEX. FAM.CODE § 261.109(a). Thus, the statute required defendants to make a report concerning all the children at the center.

These factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way. Rather, we set out these considerations as guides to assist a court in answering the ultimate question of whether imposing tort liability for violations of a criminal statute is fair, workable, and wise.

■ We first consider the fact that, absent a change in the common law, a negligence per se cause of action against these defendants would derive the element of duty solely from the Family Code. At common law there is generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress. *See Butcher,* 906 S.W.2d at 15; *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Although there are exceptions to this no-duty rule, *see, e.g., Lefmark Management Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997) (noting that under some circumstances, person in control of premises has duty to protect invitees from crime), this case does not fall within any of the established exceptions, and Mr. and Mrs. N. have not asked this Court to impose on persons who are aware of child abuse a new common law duty to report it or take other protective action.

■ In contrast, the defendant in most negligence per se cases already owes the plaintiff a pre-existing common law duty to act as a reasonably prudent person, so that the statute's role is merely to define more precisely what conduct breaches that duty. *See Rudes,* 324 S.W.2d at 204 ("We adopt the statutory test rather than that of the ordinarily prudent man as the more accurate one to determine negligence ...."); *see also Moughon,* 576 S.W.2d at 604; RESTATEMENT (SECOND) OF TORTS § 286 (1965) (both defining negligence per se as the judicial adoption of a statute to define the standard of conduct of a reasonable person). For example, the overwhelming majority of this Court's negligence per se cases have involved violations of traffic statutes by drivers and train operators—actors who already owed a common law duty to exercise reasonable care toward others on the road or track. *See, e.g., Murray v. O & A Express, Inc.,* 630 S.W.2d 633 (Tex.1982); *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694 (Tex.1972); *Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 156 Tex. 69, 291 S.W.2d 931 (1956); *Liberty Film Lines v. Porter,* 136 Tex. 49, 146 S.W.2d 982 (1941); *Texas Co. v. Betterton,* 126 Tex. 359, 88 S.W.2d 1039 (1936); *Lancaster & Wight v. Allen,* 110 Tex. 213, 217 S.W. 1032 (1920); *Missouri, K & T. Ry. Co. v. Saunders,* 101 Tex. 255, 106 S.W. 321 (1908); *San Antonio & A.P. Ry. Co. v. Bowles,* 88 Tex. 634, 32 S.W. 880 (1895).

When a statute criminalizes conduct that is also governed by a common law duty, as in the case of a traffic regulation, applying negligence per se causes no great change in the law because violating the statutory standard of conduct would usually also be negligence under a common law reasonableness standard. *See Praesel,* 967 S.W.2d at 395; *Parrott v. Garcia,* 436 S.W.2d 897, 900 (Tex. 1969); *Rudes,* 324 S.W.2d at 204; Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 COLUM. L.REV. 21, 34 (1949). But recognizing a new, purely statutory duty "can have an extreme effect upon the common law of negligence" when it allows a cause of action where the common law would not. *See* Leonard, 23 SANTA CLARA L.REV. at 449 n. 92. In such a situation, applying negligence per se "bring[s] into existence a new type of tort liability." *Burnette v. Wahl,* 284 Or. 705, 588 P.2d 1105, 1109 (1978). The change tends to be especially great when, as here, the statute criminalizes inaction rather than action. *See generally Otis Eng'g,* 668 S.W.2d at 309; 3 HARPER ET AL., THE LAW OF TORTS § 18.6 (2d ed.1986); KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 56, at 373–77 (5th ed.1984); Thayer, *Public Wrong and Private Action,* 27 HARV. L.REV. 317 (1914) (all discussing traditional tort law distinction between misfeasance and nonfeasance).

Some commentators contend that the term "negligence per se" does not even apply when the statute on which civil liability is based corresponds to no common law duty. *See* KEETON ET AL. § 36, at 221 n. 9; Forell, *The Statutory Duty Action in Tort: A Statutory/Common Law Hybrid,* 23 IND. L.REV. 781, 782 (1990). While our definition has never been so restrictive, this Court in fact

has created a new duty by applying negligence per se on only one occasion. In *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985), a third party dragged the plaintiff into an unlocked vacant apartment owned by the defendant and raped her. Because the plaintiff was a trespasser according to traditional premises liability categories, the defendant landowner owed her no common law duty. *See id.* at 548. Although two members of this Court would have recognized a new common law duty of reasonable care toward trespassers, at least in certain cases, *see id.* at 551–54 (Kilgarlin, J., concurring); *id.* at 554 (Spears, J., concurring), a plurality instead found a duty only in a city ordinance requiring landowners to keep vacant buildings locked. *See id.* at 549. But in our next major negligence per se case, *El Chico Corp. v. Poole*, we returned to the norm of deriving duty from the common law and looking to the statute only for the standard of conduct. Only after we created a new common law duty not to sell alcohol to intoxicated persons, *see El Chico*, 732 S.W.2d at 309–12, did we adopt a relevant section of the Alcoholic Beverage Code as "the attendant standard of conduct." *Id.* at 312–13. Thus, based on both this Court's past practice and the observations of noted scholars, we conclude that the absence of a relevant common law duty should be considered in deciding whether to apply negligence per se to the Family Code's reporting provision.

The court of appeals in this case listed several factors to consider in deciding whether to apply negligence per se. *See* 944 S.W.2d at 730 (citing Ratliff, Comment, *Negligence Per Se in Texas*, 41 TEX. L.REV. 104, 106 (1962)). According to the court of appeals, the principal factors favoring negligence per se are that the Legislature has determined that compliance with criminal statutes is practicable and desirable and that criminal statutes give citizens notice of what conduct is required of them. *See id.* As considerations against negligence per se, the court of appeals cautioned that some penal statutes may be too obscure to put the public on notice, may impose liability without fault, or may lead to ruinous monetary liability for relatively minor offenses. *See id.* The first of these factors is not helpful because it points the same way in every case: the very existence of a criminal statute implies a legislative judgment that its requirements are practicable and desirable. The court of appeals' remaining factors, however, are pertinent to our analysis.

On the question of notice, this Court has held that one consideration bearing on whether to apply negligence per se is whether the statute clearly defines the prohibited or required conduct. *See Praesel*, 967 S.W.2d at 395; *Carter*, 584 S.W.2d at 278; RESTATEMENT (SECOND) OF TORTS § 874A cmt. h(1). The Family Code's reporting requirement is triggered when a person "has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect." TEX. FAM.CODE § 261.109(a). In this case, defendants allegedly were eyewitnesses to sexual abuse. Under these facts, there is no question that they had cause to believe abuse was occurring, and thus that the statute required them to make a report. In many other cases, however, a person may become aware of a possible case of child abuse only through second-hand reports or ambiguous physical symptoms, and it is unclear whether these circumstances are "cause to believe" that such conduct "may be" taking place.[6] *See Scott*, 906 S.W.2d at 20. A statute that conditions the requirement to report on these difficult judgment calls does not clearly de-

---

6. Determining whether abuse is or may be occurring in a particular case is likely to be especially difficult for untrained laypersons. Texas is one of a minority of states that require any person who suspects child abuse to report it. *See* O'Brien & Flannery, *The Pending Gauntlet to Free Exercise: Mandating that Clergy Report Child Abuse*, 25 LOY. L.A. L.REV. 1, 24–25 & n. 127 (1991) (collecting statutes). Most states place such a requirement only on professionals who may be expected to know more than the average person about recognizing child abuse and who have a professional relationship with and responsibility for children. *See id.* at 19 n. 106 (collecting statutes); *id.* at 24. The Texas Family Code contains a separate mandatory reporting provision, not relevant here, specifically directed to members of certain professions. *See* TEX. FAM. CODE § 261.101(b).

fine what conduct is required in many conceivable situations.[7]

The next factor the court of appeals considered was whether applying negligence per se to the reporting statute would create liability without fault. *See* 944 S.W.2d at 730. We agree with the court of appeals that it would not, because the statute criminalizes only the "knowing[ ]" failure to report.[8] *See id.; see also El Chico*, 732 S.W.2d at 313 (holding under a similarly worded statute that "a liquor licensee is negligent as a matter of law under the statute when he *knowingly* sells an alcoholic beverage to an intoxicated person" (emphasis added)). This characteristic of the statute weighs in favor of imposing civil liability.

Our next consideration is whether negligence per se would impose ruinous liability disproportionate to the seriousness of the defendant's conduct. In analyzing this factor, the court of appeals treated child abuse as the relevant conduct. *See* 944 S.W.2d at 730 ("[T]he abuse of children has become notorious."). The conduct criminalized by section 261.109, however, is not child abuse but the failure to report child abuse. Through its penal laws, the Legislature has expressed a judgment that abuse and nonreporting deserve very different legal consequences. The abuser in this case committed the offense of aggravated sexual assault on a child under the age of fourteen, a first degree felony carrying a penalty of five to ninety-nine years in prison and a fine of up to $10,000. *See* TEX. PEN.CODE §§ 22.021, 12.32. Almost all of the other acts of abuse and neglect covered by the reporting requirement, *see* TEX. FAM.CODE § 261.001(1), (4) (defining "abuse" and "neglect"), are also felonies. *See* TEX. PEN.CODE § 22.04 (injury to a child); *id.* § 22.041 (abandoning or endangering child); *id.* § 22.011(a)(2), (f) (stat-

utory rape). Even the lowest level of felony is punishable by 180 days to two years in jail and a $10,000 fine, *see id.* § 12.35, and automatically deprives the offender of certain civil rights such as the franchise, *see* TEX. ELEC.CODE § 13.001(a)(4), eligibility for public office, *see id.* § 141.001(a)(4), and the right to own a firearm, *see* TEX. PEN.CODE § 46.04(a). By contrast, failure to report abuse or neglect, no matter how serious the underlying crime, is a class B misdemeanor punishable by no more than six months in jail and a $2,000 fine. *See* TEX. FAM.CODE § 261.109(b); TEX. PEN.CODE § 12.22. This evidence of legislative intent to penalize nonreporters far less severely than abusers weighs against holding a person who fails to report suspected abuse civilly liable for the enormous damages that the abuser subsequently inflicts. The specter of disproportionate liability is particularly troubling when, as in the case of the reporting statute, it is combined with the likelihood of "broad and wide-ranging liability" by collateral wrongdoers that we condemned in *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d at 279.

Finally, in addition to the factors discussed by the court of appeals, we have also looked to whether the injury resulted directly or indirectly from the violation of the statute. *See Praesel*, 967 S.W.2d at 395. In *Carter v. William Sommerville & Son, Inc.*, we refused to apply negligence per se liability to a provision of the Texas Motor Carrier Act making it a misdemeanor to aid and abet any violation of the Act. *See Carter*, 584 S.W.2d at 278–79. We concluded that the aiding and abetting section was "too far removed to be adopted as a standard" for civil liability, in part because "[i]t is only by first finding a violation of some other section of the Act that the court may then find a violation" of that

---

7. We do not mean to suggest that section 261.109 is unconstitutionally vague. In fact, one court of appeals has already rejected an as-applied vagueness challenge to this provision. *See Morris v. State*, 833 S.W.2d 624, 627 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). A statute's lack of clarity need not rise to a constitutionally suspect level in order to be a factor in our determination of whether imposing negligence per se is appropriate.

8. Although the issue of strict liability is related to the problem of notice, *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), a statute may require scienter and yet fail to define clearly the prohibited conduct. *Cf. Long v. State*, 931 S.W.2d 285, 289 (Tex.Crim. App.1996).

provision. *Carter,* 584 S.W.2d at 279. Like the aiding and abetting provision in *Carter,* Family Code section 261.109 defines the misdemeanor of failure to report child abuse in terms of the wrongful act of a third party. Under *Carter*'s reasoning, the indirect relationship between violation of such a statute and the plaintiff's ultimate injury is a factor against imposing tort liability.

The lack of direct causation is not in itself dispositive; we have imposed civil liability for some statutory violations that caused the plaintiff's injury by facilitating the tort of a third party. *See El Chico,* 732 S.W.2d at 312–13 (statute prohibiting sale of alcohol to intoxicated person); *Nixon,* 690 S.W.2d at 548–49 (building ordinance requiring security measures). But a reporting statute by definition places a *fourth* party between the defendant and the plaintiff: the person or agency to whom the defendant is required to make the report. Thus, the connection between the defendant's conduct and the plaintiff's injury is significantly more attenuated in a case based on failure to report than in *Nixon* or *El Chico.* We are not aware of any Texas case applying negligence per se to a statute that, like the child abuse reporting provision, interposes not one but two independent actors between the plaintiff and the defendant.

We conclude by noting that for a variety of reasons, including many of those we have discussed, most other states with mandatory reporting statutes similar to Texas's have concluded that the failure to report child abuse is not negligence per se. *See C.B. v. Bobo,* 659 So.2d 98, 102 (Ala.1995); *Fischer v. Metcalf,* 543 So.2d 785, 790–91 (Fla.Dist.Ct. App.1989); *Cechman v. Travis,* 202 Ga.App. 255, 414 S.E.2d 282, 284 (1991); *Borne v. Northwest Allen County Sch. Corp.,* 532 N.E.2d 1196, 1202–03 (Ind.Ct.App.1989); *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 819 P.2d 587, 604 (1991); *Valtakis v. Putnam,* 504 N.W.2d 264, 266 (Minn.Ct.App.1993); *Bradley v. Ray,* 904 S.W.2d 302, 312–14 (Mo. Ct.App.1995); *Marquay v. Eno,* 139 N.H. 708, 662 A.2d 272, 276–78 (1995). *But see Landeros v. Flood,* 17 Cal.3d 399, 131 Cal. Rptr. 69, 551 P.2d 389, 396–97 (1976); *Cur-ran v. Walsh Jesuit High Sch.,* 99 Ohio App.3d 696, 651 N.E.2d 1028, 1030 (1995); *Doe v. Coffee County Bd. of Educ.,* 852 S.W.2d 899, 909 (Tenn.Ct.App.1992).

In summary, we have considered the following factors regarding the application of negligence per se to the Family Code's child abuse reporting provision: (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; (2) whether the statute puts the public on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute. Because a decision to impose negligence per se could not be limited to cases charging serious misconduct like the one at bar, but rather would impose immense potential liability under an ill-defined standard on a broad class of individuals whose relationship to the abuse was extremely indirect, we hold that it is not appropriate to adopt Family Code section 261.109(a) as establishing a duty and standard of conduct in tort. Therefore, Mr. and Mrs. N. and their children may not maintain a claim for negligence per se or gross negligence based on defendants' violation of the child abuse reporting statute. Because plaintiffs did not appeal the court of appeals' adverse decision on their common law negligence claims, we do not consider whether Texas should impose a common law duty to report or prevent child abuse.

For the foregoing reasons, we reverse the judgment of the court of appeals and render judgment that plaintiffs take nothing.