**CERNOSEK ENTERPRISES, INC.; CJN Investments, Inc.; and Anthony Cernosek, Appellants,**

v.

**CITY OF MONT BELVIEU; Enterprise Products Operating, LLC; Mont Belvieu Caverns, LLC; and Enterprise Texas Pipeline, Inc., Appellees.**

No. 01–09–00706–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 10, 2011.

See also 222 S.W.3d 515.

Guy E. Matthews, Lee N. Joseph, Frank Z. Lin, Matthews, Lawson & Bowick, PLLC, David Lodholz, Houston, TX, for Appellants.

Christopher L. Nichols, J. Grady Randle, Randle Law Office Ltd., LLP, Chanler A. Langham, Thomas W. Paterson, Susman Godfrey, LLP, Houston, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

This appeal arises out of a prior settlement agreement between appellees, the City of Mont Belvieu and Enterprise Products Operating, LLC, Mont Belvieu Caverns, LLC, and Enterprise Texas Pipeline, Inc. *See City of Mont Belvieu v. Enter. Prods. Operating, LP,* 222 S.W.3d 515 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Appellants Cernosek Enterprises, Inc., CJN Investments, Inc., and Anthony Cernosek, collectively, own Hill Lumber, which is located and does business in the City of Mont Belvieu.[1]

In 2005, Enterprise began drilling within the City limits to create an underground hydrocarbon storage facility. *Id.* at 517. Enterprise had a drilling permit from the Texas Railroad Commission, but did not have City permits. *Id.* The City sued Enterprise, and Enterprise filed a plea to the jurisdiction alleging that the trial court

---

1. In this opinion, we will refer to the parties as follows: (1) Enterprise Products Operating, LLC, Mont Belvieu Caverns, LLC, and Enterprise Texas Pipeline, Inc. collectively as "Enterprise"; (2) Cernosek Enterprises, Inc., CJN Investments, Inc., and Anthony Cernosek collectively as "Hill Lumber"; and (3) the City of Mont Belvieu as "the City."

lacked subject-matter jurisdiction to overturn the Commission's decision to issue a permit, which the trial court granted. *Id.* at 517–18.

After the Fourteenth Court of Appeals reversed the trial court, the City and Enterprise entered into a July 2007 settlement agreement. Among other things, the settlement agreement required that Enterprise purchase, at three times the tax value of the most recent tax appraisal, homes of people located on the salt dome who resided there before an explosion that occurred in the 1980s and who did not participate in the previous buyout offer. *See Maranatha Temple, Inc. v. Enter. Prods. Co.,* 893 S.W.2d 92, 95–96 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (discussing 1980s buyout). Enterprise also purchased City property such as the old city hall. Excluded from the settlement agreement were commercial entities and residents who moved to the area after the initial buyout. Finally, pursuant to the settlement agreement, the City issued drilling permits to Enterprise for wells that were previously permitted by the Railroad Commission.

In June 2008, Hill Lumber sued the City and Enterprise, alleging that they had knowingly violated Mont Belvieu's municipal ordinances—specifically, chapter 10 of the City Code, regarding the issuance of permits, and chapter 25, the City's zoning ordinance regulating the drilling and subsequent operation of hydrocarbon storage wells—and that the City had violated the Open Meetings Act[2] in entering into the settlement agreement. Hill Lumber claimed that these violations gave rise to liability on the part of the City for due-process violations and inverse condemnation and gave rise to liability in tort on the part of Enterprise for fraud, conspiracy, and breach of fiduciary duty.

Specifically, Hill Lumber contended that the City's ordinances required the written consent of all property owners within 2,500 feet of a storage well site before drilling could be permitted and that two of the wells the City had permitted Enterprise to drill were drilled within 2,500 feet of Hill Lumber's location without its written consent. Hill Lumber also contended that the City gave inadequate notice of the permits. It acknowledges that the City Council held a special meeting on July 16, 2007 to discuss in public the City's settlement agreement with Enterprise and that it gave three-days prior notice of that meeting. It also acknowledges that the City Council subsequently held a public meeting on July 23, 2007 at which the drilling permits were approved. Hill Lumber does not deny that it had actual notice of these meetings, but it contends that the notice of the drilling permits was "not sufficient" because not all of the notice requirements in the ordinances were satisfied.

In its prayer, Hill Lumber sought revocation of the well permits for the two wells drilled within 2,500 feet of its property, an order requiring Enterprise to remove all structures it had built as a result of the permits and to shut down and plug the wells, a declaratory judgment that the City had violated its ordinances, preliminary and permanent injunctions against the drilling and operation of the wells, and actual and exemplary damages against Enterprise. However, although Enterprise drilled the two wells within 2,500 feet of Hill Lumber's location, the record does not reflect that Hill Lumber actively pursued injunctive relief to stop the wells.

Both the City and Enterprise filed special exceptions, claiming Hill Lumber had not alleged facts sufficient to show that the

2. TEX. GOV'T CODE ANN §§ 551.001–.146 (West 2004 & Supp. 2010).

trial court had jurisdiction over its claims. The City and Enterprise alleged that Hill Lumber had not shown that the ordinances Hill Lumber claimed they had violated created a private cause of action. Nor had it stated facts showing that it had any particular individual interest in the issuance of the permits apart from a general community interest. The City and Enterprise also alleged that Hill Lumber had not pleaded facts that showed the City was not allowed to use the exceptions and waivers found in the ordinances, which permitted the City Council to grant exceptions to its permitting requirements at the request of an applicant "upon such conditions it determines necessary to protect public health and safety." They also pointed out that the City's ordinances required that the City consider the application at a city-council meeting at which "anyone may speak out for or against granting the application" for a permit and that Hill Lumber had not stated facts showing that the July 16 and July 23 meetings were not open meetings or that notice of the meetings was inadequate. The City and Enterprise further alleged that Hill Lumber had failed to show that it had standing to challenge the settlement agreement on contract or tort grounds. The City also specially excepted to Hill Lumber's pleadings of violations of due process on the ground that Hill Lumber had not shown how it had been deprived of due process, and it specially excepted to Hill Lumber's inverse-condemnation claim on the ground that it had failed to allege how the well permits interfered with its use and enjoyment of its property economically or how they affected the value of Hill Lumber or caused the severe economic impact Hill Lumber claimed.

Enterprise filed a plea to the jurisdiction, contending that Hill Lumber had no standing to use the lawsuit to enforce the municipal ordinances. The City filed a similar plea to the jurisdiction based on standing, and it also asserted its immunity from suit. In November 2008, the trial court granted the City's plea to the jurisdiction and special exceptions, except on Hill Lumber's claims for alleged violations of the Open Meetings Act. On December 18, 2008, the trial court granted Enterprise's plea to the jurisdiction and special exceptions, holding that Hill Lumber could not amend its petition to assert any valid claims or causes of action. After Hill Lumber dismissed its remaining Open Meetings Act claim against the City, the trial court signed a final judgment in July 2009 dismissing with prejudice all of Hill Lumber's claims.

**The City's Governmental Immunity**

In issue one, Hill Lumber contends that the trial court erred in granting the City's plea to the jurisdiction based on governmental immunity.[3] Governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002).

---

**3.** The parties use the term "sovereign immunity," as opposed to the proper term "governmental immunity." The doctrines of sovereign and governmental immunity are related but distinguishable. Sovereign immunity protects the State itself and various divisions of state government, while governmental immunity protects political subdivisions, including counties, cities, and school districts. *See Ben Bolt—Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006)

Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages. *See Tooke v. City of Mexia,* 197 S.W.3d 325, 331 n. 11 (Tex. 2006); *IT–Davy,* 74 S.W.3d at 853–54; *Gen. Serv. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591, 594 (Tex. 2001); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). Under this centuries-old common-law doctrine, the sovereign is immune from liability and also from lawsuits. *See IT–Davy,* 74 S.W.3d at 853; *Little–Tex,* 39 S.W.3d at 594; *Fed. Sign,* 951 S.W.2d at 405. Immunity from liability shields the State from judgments. *IT–Davy,* 74 S.W.3d at 853; *Little–Tex,* 39 S.W.3d at 594; *Fed. Sign,* 951 S.W.2d at 405. Immunity from suit prohibits a suit against the State unless the legislature grants consent. *Little–Tex,* 39 S.W.3d at 594.

The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities. *Tooke,* 197 S.W.3d at 331; *Wichita Falls Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts. *Taylor,* 106 S.W.3d at 694 n. 3; *see also Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the legislature. *See IT–Davy,* 74 S.W.3d at 853.

A political subdivision may contest a trial court's subject-matter jurisdiction by filing a plea to the jurisdiction. *Jones,* 8 S.W.3d at 638. While a plea to the jurisdiction is a procedural means for a political subdivision to contest jurisdiction, the party suing the governmental entity has the burden to establish consent to be sued. *Id.*

Hill Lumber claims that the City is not entitled to governmental immunity from suit for the following reasons: (1) the City acted ultra vires by not following its own ordinances;[4] (2) the City's actions constitute a taking under Texas Constitution article I, section 17; and (3) Local Government Code section 245.006 and Civil Practice and Remedies Code section 37.006 expressly waive the City's immunity from suit. *See* Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM.CODE ANN. § 37.006 (West 2008); TEX. LOC. GOV'T CODE ANN. § 245.006 (West 2005).

### 1. Ultra–Vires Actions

Hill Lumber first argues that governmental immunity does not apply to the City because it did not follow its own ordinances in issuing the permits. It is true that when an official acts without legal authority or fails to perform a purely ministerial act, the official's acts are ultra vires and a suit to require the official to comply with statutory or constitutional provisions is not prohibited by sovereign immunity. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex.2009). We need not decide whether the ultra vires doctrine

---

**4.** MONT BELVIEU, TEX., CODE §§ 10–11, 10–14, 10–62, 10–64, 10–66, 10–68. The ordinances were not introduced into the trial-court record, but were merely attached to pleadings. *See Metro Fuels, Inc. v. City of Austin,* 827 S.W.2d 531, 532 (Tex.App.-Austin 1992, no writ) (discussing how to take judicial notice of municipal or county ordinance and make or-dinance part of appellate record). The fact that a document is physically present in the clerk's record as an attachment to another document does not make the attached document a proper part of the appellate record. *See Atchison v. Weingarten Realty Mgmt. Co.,* 916 S.W.2d 74, 77 (Tex.App.-Houston [1st Dist.] 1996, no writ).

applies in this case, however, because Hill Lumber has not sued the proper parties.

■ Ultra vires claims cannot be brought against the state, but must be brought against officials in their official capacity. *Id.* at 373; *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 596–98 (Tex.App.-Austin 1991, writ denied) (discussing ultra vires exception and differentiating between cases in which officials are sued and cases in which state or governmental units are sued). Hill Lumber has sued the City directly, not the members of the City Council. Accordingly, governmental immunity prohibits the suit Hill Lumber has brought against the City.

### 2. Taking Under Texas Constitution Article I, Section 17

■ Hill Lumber next argues that governmental immunity does not bar its inverse-condemnation claim under Texas Constitution article I, section 17. *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) (article I, section 17 constitutes waiver of governmental immunity for the taking, damaging, or destruction of property for public use). Because this is a regulatory-taking claim, rather than a physical-taking claim, Hill Lumber must show that the governmental action denies use of the property, renders the property valueless, or unreasonably interferes with the property owner's right to use and enjoy the property. *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 671–73 (Tex.2004); *City of Dallas v. Blanton*, 200 S.W.3d 266, 274 (Tex.App.-Dallas 2006, no pet.).

Hill Lumber's appellate briefing does not cite to any specific allegations in the record stating why it cannot use its property or stating how the City has unreasonably interfered with its right to use and enjoy the property by issuing a drilling permit. Instead, Hill Lumber's live pleading merely alleges its "property value has been seriously diminished, [its] property and lives (as well as the lives of employees and customers) are at serious risk, [it] has lost business, and [its] general welfare and ability to enjoy a peaceable community [has] been seriously harmed." These allegations do not state specific facts evincing a taking by the City, and thus the trial court properly granted the plea to the jurisdiction on this ground. *City of Dallas*, 200 S.W.3d at 274, 279 (discussing level of evidence necessary to demonstrate regulatory taking).

### 3. Express Waiver of Immunity

■ Finally, Hill Lumber claims that the City is not entitled to governmental immunity because two statutes expressly waive immunity—Local Government Code section 245.006 and Civil Practice and Remedies Code section 37.006. Local Government Code chapter 245 generally requires regulatory agencies to determine permit applications solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original permit application is filed. Tex. Loc. Gov't Code Ann. § 245.002(a) (West 2005). Chapter 245(1) allows enforcement through mandamus or declaratory or injunctive relief and (2) waives a political subdivision's immunity from suit for action under the chapter. Tex. Loc. Gov't Code Ann. § 245.006 (West 2005).

Even were we to assume that chapter 245 applies to the specific permits in this case, Hill Lumber is not entitled to the waiver of immunity from suit because it is not the permit applicant. Section 245.006 itself does not specify who may bring a suit, but section 245.002 discusses "[r]ights to which a permit applicant is entitled under this chapter." Tex. Loc. Gov't Code Ann. § 245.002(a–1) (West 2005). Unless a statute is ambiguous, we construe a statute

as written, using the literal text. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651–52 (Tex.2006). Nothing in chapter 245 suggests that section 245.006 waives governmental immunity and allows anyone other than a permit applicant to have the right to file suit.

■ Hill Lumber last relies on the Uniform Declaratory Judgments Act to waive governmental immunity from suit: "In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party...." TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(b) (West 2008). Here, no one challenges the validity of Mont Belvieu's ordinances, but rather the City's actions under the ordinances. *See City of El Paso,* 284 S.W.3d at 373 n. 6.

We hold that the trial court did not err in granting the City's plea to the jurisdiction based on governmental immunity, and we overrule issue one. Because the City's plea to the jurisdiction was properly granted on governmental immunity, we do not reach Hill Lumber's remaining claims against the City in issues two and three concerning standing.

### Hill Lumber's Standing to Allege Its Claims Against Enterprise

In issues two and three, Hill Lumber contends that the trial court erred in granting the City's plea to the jurisdiction based on lack of standing. Issue two relates solely to Hill Lumber's statutory standing to sue the City, and we do not reach it. In issue three, Hill Lumber asserts it has common-law standing to sue Enterprise for negligence, gross negli-

gence, fraud by nondisclosure, and nuisance claims.

■ The general test for standing requires that there be a real controversy between the parties which will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 447 (Tex. 1993). Standing is a component of subject-matter jurisdiction, which requires a pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* at 446. Standing also requires some interest peculiar to the person individually and not as a member of the public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *Labrado v. Cnty. of El Paso,* 132 S.W.3d 581, 586–87 (Tex.App.-El Paso 2004, no pet.).[5] The general rule applies unless standing has been statutorily conferred on the plaintiff. *Williams v. Lara,* 52 S.W.3d 171, 178 (Tex.2001); *Labrado,* 132 S.W.3d at 587. When a private cause of action is alleged to derive from a constitutional or statutory provision, the duty of the courts is to ascertain the drafters' intent. *Brown v. De La Cruz,* 156 S.W.3d 560, 563 (Tex.2004). In such a case, the statute itself serves as the basis for the analysis. *Everett v. TK–Taito, L.L.C.,* 178 S.W.3d 844, 850 (Tex.App.-Fort Worth 2005, no pet.). The courts will not imply that a constitutional or statutory provision gives rise to a private cause of action unless the drafters' intent is clear from the language. *See Brown,* 156 S.W.3d at 566.

■ On appeal, Hill Lumber does not substantively brief any of the common-law elements of its negligence, gross negligence, fraud by nondisclosure, and nui-

---

**5.** *See also Wilkinson v. Dallas/Fort Worth Int'l Airport Bd.,* 54 S.W.3d 1, 13 (Tex.App.-Dallas 2001, no pet.) (holding that allegation that governmental activity caused diminution in value or marketability of property is insuffi-

cient to state claim for inverse condemnation under Texas Constitution; only special injuries to property not suffered by community in general are compensable).

sance claims. Instead, it argues that these are "common law claims based on the duties created in the ordinances," that it has suffered "actual harm caused by [Enterprises'] violations of statutes and ordinances," and that it "seeks recovery of damages caused by the City and Enterprise's tortious permitting, drilling and operating of [the two wells], contrary to the direct, clear, and unambiguous requirements set forth in the City Code." Enterprise argues, and we agree, that whether the City's ordinances create duties that can be the basis of private causes of action, regardless of whether they sound in tort, is a question of law. *See Brown*, 156 S.W.3d at 563 (discussing private cause of action based on statute); *Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex.1998) (discussing application of negligence per se based on criminal statute).

Although Hill Lumber cites cases discussing other statutes,[6] the only substantive legal argument directly related to the City ordinances that Hill Lumber makes on appeal is the following from its reply brief:

> The proper test to see if a duty can be established by statute is set forth in *Perry v. S.N.*, where the Supreme Court noted six factors to use in determining if implementation of a statutory duty is proper. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex.1998). Here, each of the factors supports implementation of a statutory duty against Enterprise: (1) the statute simply supplies the standard of care regarding fraud, negligence, and nuisance by imposing an absolute distance restriction not only for permit issuance, but also for the existence of any wellhead of any storage well, *see* City Code § 10–14; (2) the City Code states

clearly and unambiguously that the location cannot be within 2,500 feet of Hill Lumber's commercial property without Hill Lumber's prior written consent, *see* City Code § 10–14; (3) because the statute is narrowly drawn to only effect [sic] hydrocarbon storage wells in the City, it is highly unlikely than an unsophisticated party could be subject to liability without first checking the statutory requirements; (4) Enterprise's unauthorized wells expose them to relatively small liability compared to the value of drilling a hydrocarbon storage well, and the potential damage to the surrounding land; and (5) Enterprise's unauthorized drilling and operation of the well directly caused Hill Lumber's injuries, as contemplated by the statute, *see* City Code § 10–63(A) ("drilling or operation of a well … might be injurious or disadvantageous to the City or to its inhabitants, especially adjacent property owners."). Each *Perry* factor supports the conclusion that the ordinances are the proper ground to create statutory duties with which Enterprise is required to conform its actions.

We hold that Hill Lumber has not adequately briefed this issue, and we decline to undertake a detailed de novo examination of each of the city ordinances to determine whether they create duties that can be the basis of private causes of action. *See* TEX.R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

■ We observe, however, that Hill Lumber has utterly failed to show that the ordinances it alleges were violated were intended to provide a person in its position

---

6. *E.g., SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 153 (Tex.App.-El Paso 2007, pet. denied) (discussing alleged violations of Federal Trade Commission rules adopted pursuant to 15 U.S.C. § 57a(a)(1) 2006).

with a private cause of action, nor could it. *See Brown,* 156 S.W.3d at 563. The City's general purpose in setting out the permitting procedures and zoning ordinances, stated with specificity in several places in both chapter 10 and the zoning ordinance, is to regulate drilling operations, site requirements, and land use in the public interest. The City enforces these requirements and provides penalties, including criminal penalties in the case of zoning violations, for their abuse. *See* Mont Belvieu, Tex., Code §§ 10–11, 10–14, 10–62, 10–64, 10–66, 10–68, 25–1 to 25–100. Nowhere do the ordinances cited by Hill Lumber express the legislative intent to provide a private cause of action to citizens for a violation of either the permitting regulations or the zoning provisions. Therefore, Hill Lumber has failed to establish that it has standing to pursue a claim against Enterprise under the language of these ordinances. *See Everett,* 178 S.W.3d at 850.

██ Hill Lumber's argument, to the extent it makes one—that its satisfaction of the *Perry* factors justifies this Court's determination that it is entitled to a permanent injunction enjoining Enterprise's drilling and operation of the two wells permitted to be drilled within 2,500 feet of its property, requiring plugging of the wells and removal of all structures, and awarding both actual and exemplary damages against Enterprise because of injuries allegedly resulting from the failure of the City and Enterprise to follow the City's permitting and zoning ordinances—is likewise unavailing. In *Perry,* parents brought negligence per se actions under Family Code section 261.109(a), which requires the reporting of child abuse, against persons who had failed to report child abuse they had allegedly witnessed at a day-care center. *Perry,* 973 S.W.2d at 302–04; *see* Tex. Fam.Code Ann.

§ 261.109(a) (West Supp. 2010). The supreme court pointed out that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Perry,* 973 S.W.2d at 304. It held that the threshold questions in every negligence per se action seeking to impose liability for the defendant's violation of a statute are (1) whether the plaintiff belongs to the class the statute was intended to protect and (2) whether his injury is of a type the statute was designed to prevent. *Id.* at 305. The court further held that although the plaintiffs were within the class of persons the child-abuse-reporting statute was meant to protect and suffered the kind of injury the Legislature intended the statute to prevent, this did not end the inquiry. *Id.* at 305.

The *Perry* court set out a number of factors to aid courts in determining whether tort liability should be imposed for the violation of a statute. *See id.* at 305–06. The factors the *Perry* court stated should be considered in deciding to apply negligence per se are: (1) whether the statute merely codifies a pre-existing common-law duty "so that the statute's role is merely to define more precisely what conduct breaches that duty"; (2) whether the statute puts the public on notice by clearly defining the required conduct; (3) whether applying negligence per se would create liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, a result it found particularly troubling when "combined with the likelihood or 'broad and wide-ranging liability' by collateral wrongdoers"; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute by a third party. *Id.* at 306–09.

Here, while Hill Lumber, as a property-owner within the City, is among the per-

sons the City intended to protect by regulating storage-well drilling and operation, its claims satisfy none of the *Perry* factors for applying the law of negligence per se: (1) there is no common-law duty running from either the City or Enterprise to Hill Lumber not to drill a well within 2,500 feet of its property, rather such a duty is purely statutory; (2) while the ordinances clearly define the requirements for obtaining drilling permits, the same ordinances that Hill Lumber claims were violated clearly provide for the City to make exceptions in the public interest; (3) extending Hill Lumber's claims of negligence per se beyond the City, which allegedly violated its ordinances by permitting Enterprise to drill, to Enterprise, which drilled wells pursuant to permits granted it by the State and by the City pursuant to the settlement agreement, would create liability to Hill Lumber on Enterprise's part without Enterprise's fault; (4) allowing a single property-owner in the municipality with property within 2,500 feet of a storage well to hold a publicly approved drilling operation hostage to that property owner's written consent to the well on pain of the permit holder's being permanently enjoined from drilling and operating the permitted wells and being required to cease operations, plug the wells, remove all structures, and pay that property owner actual and exemplary damages because of the City's and the permit holder's violation of municipal ordinances would plainly result in ruinous damages disproportionate to any damage suffered by Hill Lumber (none of which was specifically identified) and would create " 'broad and wide-ranging liability' by collateral wrongdoers"; and (5) any damage caused to Hill Lumber's property values by the City's or Enterprise's violation of municipal ordinances would be an indirect result of the violation of the ordinances. As in *Perry* itself, Enterprise's alleged conspiracy with the City to violate municipal ordinances fails to justify the imposition on Enterprise of tort liability to Hill Lumber under the *Perry* factors.

 Finally, we note that Hill Lumber has not demonstrated that it has standing to sue either Enterprise or the City because it has not shown that it has an interest peculiar to it individually and not as a member of the public. *See Hunt,* 664 S.W.2d at 324. In its live pleadings, Hill Lumber contends that the wells "destroy the peace and general welfare of the nearby community" and "decrease the property values of the businesses and residences near them." While Hill Lumber alleges damage to the community, it has not demonstrated that this injury affects it in some special or unique way that is different from the injury suffered by the community at large. *Labrado,* 132 S.W.3d at 586–87.

We hold that the trial court did not err in granting Enterprise's plea to the jurisdiction based on standing, and we overrule issue three.

### Enterprise's Special Exceptions

In issue four, Hill Lumber argues that the trial court erred in granting Enterprise's special exceptions. In light of our holding that the trial court did not err in granting Enterprise's plea to the jurisdiction based on standing, the trial court's grant of special exceptions is relevant only to the extent that the order stated, "Nor can [Hill Lumber] amend the petition to assert any valid causes of action against [Enterprise]." *See Tex. Ass'n of Bus.,* 852 S.W.2d at 447 ("A review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged. *See* Tex.R. Civ. P. 80."). Hill Lumber's argument on this

issue is that its pleadings were not defective, an argument we have determined to the contrary. It does not argue on appeal that the trial court erred in not allowing it to replead. Accordingly, we overrule issue four.

## Conclusion

We affirm the trial court's judgment.