**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-3090

BILLY G. BUFFORD and CHERYL BUFFORD,

Plaintiffs-Appellants,

versus

ROWAN COMPANIES, INC. and NELSON
VIDRINE,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

(June 16, 1993)

Before POLITZ, Chief Judge, REYNALDO G. GARZA and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Billy Bufford and his wife Cheryl appeal an adverse judgment on jury verdict and the denial of their post-judgment motion in their suit for damages for injuries allegedly sustained by Billy Bufford in the workplace. Concluding that the Buffords did not receive a fair trial we reverse and remand for a new trial.

Background

Bufford was employed by Rowan Companies, Inc. as a mechanic on an oil drilling vessel. He alleged that his supervisor, Nelson Vidrine, intentionally pushed him, causing him to fall over a three-foot railing onto the deck, injuring his neck and back. The Buffords brought the instant action for damages against Rowan and Vidrine. Vidrine filed a counterclaim contending that the Bufford claims were fraudulent.

The case was tried to a jury. Defendants' theory was that the Bufford case was a "copycat" lawsuit. Specifically, defendants contended that the Buffords got the idea of staging an accident, or exaggerating a minor mishap, from a former co-worker, Ray Pearson. Pearson previously had settled a suit against Rowan for on-the-job injuries. One of the ways in which Bufford purportedly "copied" Pearson was by using the same lawyers. Defendants repeatedly referred to this fact.

The jury returned a verdict for the defendants, finding that Vidrine neither battered Bufford nor negligently injured him and that the Buffords' claims were fraudulent. The district court entered judgment for the defendants on the Buffords' claims but granted a directed verdict on Vidrine's counterclaim because he offered no proof of damages. After their motion for judgment as a matter of law or a new trial was denied, the Buffords timely appealed.

## Analysis

2

This is one of those rare cases in which the actions of the trial judge combined with the conduct of defendants' counsel to impugn the integrity of plaintiffs' counsel in such a way as to prejudice the plaintiffs' case in the eyes of the jury. The damaging aspersions began with the opening statement and consisted of more than isolated remarks. Indeed they were an integral part of the defense, building toward a crescendo at the end of the trial, unfortunately amplified by the trial court. We are compelled to the conclusion that plaintiffs' substantial rights to a fair trial were impaired,[1] and that the district court abused its discretion in denying the requested new trial.

In his opening statement defense counsel stated that Bufford engaged the same lawyers as Pearson, and thus completed "the copycat nature of the claim." Bufford testified that when his injuries worsened he asked Pearson for the name of a doctor. Pearson responded by telling him to contact his lawyers[2] for a medical referral. On cross-examination, defense counsel made much of the fact that Bufford had contacted Pearson's attorneys before he visited a doctor and saw only those doctors to whom he was referred by his lawyers. On cross-examination, Bufford's

---

[1] Improper comments from the bench or by counsel will not warrant reversal unless they so permeate the proceedings that they impair substantial rights and cast doubt on the jury's verdict. **Dixon v. International Harvester Co.**, 754 F.2d 573 (5th Cir. 1985).

[2] Pearson actually referred Bufford to Stanley Jacobs. As the district court explained to the jury, Jacobs worked with Lawrence D. Wiedemann. Wiedemann was Bufford's lead counsel at trial and also worked on Pearson's case.

orthopedic surgeon acknowledged that he had received other referrals from plaintiffs' counsel. A co-worker testified that prior to his accident Billy Bufford had said that if he ever needed a lawyer he would use Pearson's attorney. Finally, in closing defense counsel reiterated that the Buffords had used the same lawyers as Pearson while arguing that their claim was a fraudulent imitation of Pearson's.

That a personal injury claim is fabricated or exaggerated is a perfectly legitimate and valid defense. The proof of such may be by direct or circumstantial evidence; defendants are afforded a broad latitude to attempt to prove this defense. What is not permitted is an unsupported, irresponsible attack on the integrity of opposing counsel. When such unprofessional conduct rears its unethical head in a courtroom, it is the duty of the trial court to suppress same, quickly and unqualifiedly, and to instruct the offending counsel to cease and desist. The court must take great care not to exacerbate the situation or to give the impression to the jury that it approves or condones any unjustified impugning of the ethical standards or integrity of an officer of the court practicing before it.

In the instant case, the underpinning of the "copycat" defense was that the Buffords' attorneys distorted minor injuries into major ones and prosecuted baseless claims. This was the obvious implication of defendants' use of the fact of the Buffords' selection of Pearson's attorneys as evidence that the Bufford claims were fraudulent. This court addressed a similar situation

4

in **United States v. McDonald**,[3] where a prosecutor offered testimony and critically commented that defense counsel was present in the defendant's house for several hours during which the prosecutor claimed that the defendant was destroying incriminating evidence. In reversing the conviction, despite the prosecutor's disclaimer of intent to malign defense counsel, we said: "Unfortunately, it is difficult, if not impossible, to sanitize the comments so as to remove the taint. Inherent in the comments is the barb that the lawyer caused, aided in or, at the very least, tolerated the destruction of evidence."[4] A similar, equally improper inference arose in the case at bar.

If the defendants had proof that the Buffords' attorneys fomented fraudulent lawsuits, they were entitled to present it.[5] Such proof could include appropriate circumstantial evidence from which reasonable inferences might be drawn. Relying on the identity of counsel as the basis for contending that the Buffords' claim was fraudulent, however, went beyond the pale of appropriate trial advocacy. That unwarranted inference may not be drawn.

In reversing the conviction in **McDonald** we warned that "No

---

[3]     620 F.2d 559 (5th Cir. 1980).

[4]     620 F.2d at 564.

[5]     Indeed, if an attorney has unprivileged factual knowledge that another attorney has engaged in unethical conduct, he is obliged to report the violation to the proper authorities. ABA Model Rule 8.3(a); Rule 8.3(a), Louisiana Rules of Professional Conduct.

prosecutor . . . may impugn the integrity of a particular lawyer or that of lawyers in general, without basis in fact, as a means of imputing guilt to a defendant."[6]  We and our colleagues in other circuits have applied a similar stricture in civil cases.[7]  By maligning opposing counsel, defendants impaired the Buffords' presentation of their case.  "[S]uch tactics unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice. . . ."[8]

We are distressed by the fact that the trial judge inadvertently exacerbated the situation.  The court appropriately exercised firm control over the trial.  Comments to counsel were

---

[6]     620 F.2d at 564.

[7]     See, e.g., **Winter v. Brenner Tank, Inc.**, 926 F.2d 468 (5th Cir. 1991); **Hall v. Freese**, 735 F.2d 956 (5th Cir. 1984); **Fineman v. Armstrong World Industries, Inc.**, 980 F.2d 171, 207 (3d Cir. 1992) ("test is whether the improper assertions have made it reasonably probable that the verdict was influenced by prejudicial statements" about opposing counsel), cert. denied, _____ U.S. _____, 113 S.Ct. 1285 (1993).  We must note in passing that the **Fineman** panel included the then-longtime chairman of the Committee on Codes of Conduct of the Judicial Conference of the United States, Judge Stapleton, and the then most senior member of that committee in length of service, Judge Fullam.  That committee is charged with the responsibility for rendering advisory ethical opinions to all judicial officers and judicial employees of the United States.

[8]     **Bruno v. Rushen**, 721 F.2d 1193, 1195 (9th Cir. 1983), cert. denied, 469 U.s. 920 (1984) (habeas relief granted where the prosecutor inferred that a witness changed her story to the defendant's advantage as a result of her meeting with defense counsel and also hinted that the fact that the defendant had hired an attorney was probative of his guilt).

occasionally somewhat acerbic, but usually were evenhanded.[9] The error occurred when, during a sidebar conference and supposedly out of the hearing of the jury, the judge threatened to jail plaintiffs' counsel for what apparently was considered to be an inappropriate retort by counsel to the court's admission of certain evidence.[10] According to two affiants, the jail threat apparently was overheard by the jury.[11]

---

[9] Cf. **United States v. Williams**, 809 F.2d 1072 (5th Cir.), rev'd in part on other grounds, 828 F.2d 1, cert. denied, 484 U.S. 896 (1987).

[10] THE COURT: Well, I'm going to permit it. The objection is overruled.
PLAINTIFFS' COUNSEL: I object, and I think it's reversible error.
THE COURT: Mr. Wiedemann, I must tell you that it's my job to try a case as best and as fairly as I can given the issues that are in the case. If I commit reversible error, the Fifth Circuit will remind me of that, sir, and not you. Get back to work.
PLAINTIFFS' COUNSEL: I'm sure they will.
THE COURT: Get back to work before you end up in jail.
PLAINTIFFS' COUNSEL: My job is to protect my client.
THE COURT: You have one more warning and then you are going to be very sorry.
PLAINTIFFS' COUNSEL: I'm going to protect my client when I have to.
THE COURT: You may be doing it from jail.
PLAINTIFFS' COUNSEL: I may be, but I'm going to.
THE COURT: Last time. Now, get back to your chair.

[11] One affiant was attorney Jacobs. The other was an attorney also seated in the audience. Both affiants were more distant from the sidebar conference than the jury and heard the reference to jail.

7

We need hardly remind that a trial judge should never sanction an attorney in the presence of the jury. The power and influence of the bench is so pervasive that even a strong display of displeasure with counsel may create prejudice for the client's cause.[12] Such obviously was not the intent of the judge in the case at bar for the comment came during a sidebar conference which, by definition, normally is out of the hearing of the jury. Unfortunately, here the sidebar comments were not so insulated.

Viewed against the backdrop of the claim that plaintiffs' counsel fomented and prosecuted fraudulent claims, the likelihood that the jury overheard the trial judge threatening counsel with jail created an unacceptable risk of a tainted verdict. The jury may well have thought that plaintiffs' counsel was facing such punishment for engaging in fraud. The conclusion necessarily flowing therefrom would be that the Buffords' claims were fraudulent.[13]

The situation was further worsened when the trial court prevented Buffords' counsel from countering defendants' aspersions. The most direct response to the challenge to counsel's integrity

---

[12] **Williams**, supra; **Newman v. A.E. Staley Mfg. Co.**, 648 F.2d 330 (5th Cir. 1981).

[13] Defendants maintain that we should review for plain error because plaintiffs' counsel did not object to the court's threat to jail him. That contention is frivolous. Plaintiffs' counsel objected by stating that he was protecting his client. Defendants, however, criticize the statement as evidence that counsel was "irrationally . . . determined to have the last word. . . ." We are not persuaded.

8

would have been evidence and argument that Pearson had a legitimate claim. Counsel attempted to so argue during his rebuttal comments, after repeated references to Pearson's case in defendants' closing argument. The trial court, however, cut counsel off, announcing in front of the jury that it was shortening his allotted time to avoid "the risk of any more intemperance." In this the trial court erred for not affording plaintiffs' attorneys a meaningful opportunity to defend their professional reputations.[14]

On remand, we leave to the trial court in the first instance the decision whether the case should be referred to another judge for retrial. Time is a great healer.

Because of the foregoing disposition we briefly address two other issues raised on appeal. With reference to the question of the admissibility of the tape recording and videotape we invite the attention of the court and counsel to our intervening decision in **Chaisson v. Zapata Gulf Marine Corp.**,[15] with the caveat that the mandate has been stayed and the ultimate disposition thereof should be noted.

Finally, the plaintiffs contest the admission of a co-worker's testimony that Billy Bufford solicited his assistance in transporting drugs. Fed.R.Evid. 608(b) forbids the use of extrinsic evidence of a specific instance of conduct to attack a

---

[14] See **O'Rear v. Fruehauf Corp.**, 554 F.2d 1304 (5th Cir. 1977) (error not to allow counsel to rebut false impression created by opposing counsel in closing argument).

[15] 988 F.2d 513 (5th Cir. 1993).

witness's character for truthfulness.  It does not bar, however, extrinsic evidence offered to contradict a witness's testimony about a material issue in the case.[16]  The co-worker's testimony therefore is inadmissible unless defendants identify specific contradictory testimony on a material issue.

REVERSED and REMANDED.

---

[16]  See **United States v. Lopez**, 979 F.2d 1024 (5th Cir. 1992), cert. denied, _____ U.S. _____, 61 U.S.L.W. 3772 (May 17, 1993) (No. 92-1624); **United States v. Opager**, 589 F.2d 799 (5th Cir. 1979).