**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 20, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-30622

TAITA CHEMICAL COMPANY, LTD.,

Plaintiff - Counter Defendant - Appellant,

versus

WESTLAKE STYRENE, LP,

Defendant - Counter Claimant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

Before HIGGINBOTHAM, STEWART, and PRADO, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Taita Chemical Company sued Westlake Styrene for breach of contract, arguing that Westlake failed to sell Taita styrene monomer at a lower price to which Taita was entitled under the contract. Westlake asserted affirmative defenses, including the aiding and abetting of a breach of fiduciary duty and fraud. Westlake also pled aiding and abetting breach of fiduciary duty and fraud as counterclaims. The jury found that Taita aided and abetted a breach of fiduciary duty and that it defrauded Westlake.

The jury awarded Taita nothing on its contract claim, but awarded Westlake $16.297 million on its aiding and abetting breach of fiduciary duty counterclaim. Westlake also recovered attorneys fees based on the fraud finding.

Taita argues that the jury's findings must be reversed because the jury instructions were erroneous. We AFFIRM the judgment denying Taita recovery under the contract and awarding Westlake attorneys fees, but REVERSE the judgement's award to Westlake on the counterclaim for aiding and abetting a breach of fiduciary duty.

I

This is the second time this contract dispute comes before us.[1] Westlake is a joint venture formed in 1990 to produce and sell styrene monomer. There were four original shareholders of Westlake: (1) Taita owned 40%; (2) BTR Nylex, which also held the majority interest in Taita, owned 20%; (3) the Chao Group owned 20%; and (4) the Sumitomo Corporation and Sumitomo Corporation of America owned 20%.

The previous opinion discussed the contract and the parties' differing interpretations of it:

> On January 15, 1991, Taita and Westlake entered into a contract known as the "Off-Take Agreement." This long-term agreement was a take-or-pay contract, under which Taita agreed to purchase 40% of Westlake's styrene monomer production capacity each month for the duration

---

[1] *See Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377 (5th Cir. 2001).

of the contract. Price was to be determined on a monthly basis in accordance with the contract's pricing clause. This clause provided that each month Taita was to receive the lowest of three alternative prices:

> 4. Price
>
> The Contract Price per pound of Product delivered or ordered for delivery, including Deemed Delivery, during each month shall be the U.S. Gulf Coast Styrene Monomer prices, net after all discounts, for contract transactions as last published in each month by DeWitt & Company, Incorporated in its *Benzene & Derivatives Newsletter,* or the price for such month charged by WSC [Westlake Styrene Corp.] to a consumer under a firm multi-year contract or the posted contract market price for comparable volumes of Product, whichever is lower. Should such publication cease to be published, Buyer and Seller shall mutually select other representative publications.

The meaning of this pricing clause and the parties' conduct with respect to its terms lies at the center of [the earlier] dispute. In essence, Taita argues that Westlake overcharged it for styrene because Westlake did not extend Taita a lower price provided by Westlake to another customer as required under Taita's interpretation of the second pricing mechanism. This second provision states that Taita shall receive "the price for such month charged ... to a consumer under a firm multi-year contract." The parties have referred to this provision as the "most favored nations" clause, for the obvious reason that it ensures that Taita, as Westlake's largest investor and principal styrene purchaser, will receive the best available price. Westlake disputes Taita's interpretation of the pricing clause, but urges that, in any event, the evidence demonstrates that Taita undeniably acquiesced in Westlake's differing reading of the contract.[2]

Affirming the district court, we held that the pricing clause entitled Taita to the lower price given to other customers,

_____

[2] *Taita Chem. Co., Ltd.*, 246 F.3d at 380-81.

3

regardless of the volume of the other sales.[3] However, we reversed the district court's decision to grant summary judgment on defendant's affirmative defenses.

On remand, Taita argued that it was entitled to reimbursement for the amount it overpaid. In response, Westlake argued that the contract on which Taita based its claim was secured by the Taita-affiliated board members' breach of fiduciary duty and fraud. The alleged breach consisted of Taita-affiliated board members remaining silent about their interpretation of the most-favored nation provision until after Westlake entered into a lower-priced contract with another company. Only then, argues Westlake, did Taita reveal its interpretation of the contract and claim the price reduction. Westlake argued that the lower-priced contracts would not have been formed but for Taita's aiding and abetting the breach of fiduciary duty. That is, if the rest of the board knew of Taita's impending claim to the lower price, the board would not have ratified the contracts. Therefore, Westlake argued that Taita's encouragement of the members to remain silent amounted to aiding and abetting a breach of fiduciary duty and fraud, and as a result, Taita should not recover. These allegations also formed the basis of Westlake's counterclaims for aiding and abetting breach of fiduciary duty and fraud.

---

[3] *Id.* at 385-86.

The jury found that (1) Taita should recover nothing; (2) Taita aided and abetted the Taita-affiliated directors of Westlake in their  breach of fiduciary duty; (3) any price discounts to which Taita may have been entitled resulted from its aiding and abetting the breach of fiduciary duty; (4) Taita committed fraud; (5) Westlake was entitled to $16.297 million for its aiding and abetting breach of fiduciary duty counterclaim; and (6) Westlake was entitled to attorneys fees.

Taita argues on appeal that the judge erroneously instructed the jury, affecting the outcome of the case.  Taita argues that the court's instructions were erroneous because (1) in explaining a fiduciary's duty to disclose information, the instructions did not limit the obligation by the principle of inquiry notice; (2) by not adequately explaining actual and apparent authority, the instructions did not allow the jury to attribute the bad acts to BTR, a different company; and (3) the instructions did not include damages as a required element of Westlake's aiding and abetting breach of fiduciary duty counterclaim.

II

5

There are three requirements to successfully challenge jury instructions.[4] First, the appellant must show that viewing the charge as a whole, the charge creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[5] Second, even if erroneous, the appellate court will not reverse if the error "could not have affected the outcome of the case."[6] Third, the appellant must show that the proposed instruction offered to the district court correctly stated the law. Perfection is not required as long as the instructions were generally correct and any error was harmless.[7] This standard provides the district court with great latitude concerning the charge.

A litigant also must have preserved the error in the charge to complain on appeal. Rule 51 of the Federal Rules of Civil Procedure outlines the requirements that one must satisfy in order to assign error for failing to give, or erroneously giving, jury instructions. One may not complain of a jury instruction "unless that party objects thereto . . . , stating distinctly the matter

---

[4] *Fed. Deposit Ins. Corp. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994); *Bender v. Brumley*, 1 F.3d 276-77 (5th Cir. 1993).

[5] *Mijalis*, 15 F.3d at 1318 (quoting *Bender*, 1 F.3d at 276-77).

[6] *Id.*

[7] *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 30 (5th Cir. 1992).

objected to and the grounds of the objection."[8] General objections to jury instructions are insufficient to meet Rule 51's requirements.[9] Furthermore, submission of an alternative instruction does not necessarily preserve error for appeal.[10] The proposed instruction must make one's "position sufficiently clear to the court to satisfy Rule 51's objection requirement."[11]

A party may be excused from Rule 51's strict requirements if "the party's position has previously been clearly made to the court and it is plain that a further objection would be unavailing."[12] To find reversible error in this instance, the appellate court must be certain that the district court was adequately informed of the objection.[13] Examples of this exception involve clear cases where the exception is justified:  a litigant who fails to object when invited to do so but who had previously filed sufficient

---

[8] FED R. CIV. P. 51.

[9] *Russell v. Plano Bank & Trust*, 130 F.3d 715, 719-720 (5th Cir. 1997); *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1272 (5th Cir.), *cert. denied*, 493 U.S. 823 (1989).

[10] *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995).

[11] *Id.*

[12] *Russell*, 130 F.3d at 720 (quoting 9A Charles Alan Wright et al., Federal Practice and Procedure § 2553 (2d ed. 1995)).

[13] *Indus. Dev. Bd. of the Town of Section, Alabama v. Fuqua Indus., Inc.*, 523 F.2d 1226, 1238 (5th Cir. 1975).

objections;[14] a litigant who fails to object after the court intimated that no more objections would be heard;[15] and a previous "emphatic" ruling by a judge made later objections futile.[16]

If error is not preserved, we review for plain error. To meet this standard, a party must show: "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"[17] The plain error exception is designed to prevent a miscarriage of justice where the error is clear under current law.[18]

III

A

Taita first argues that the district court erred by failing to give a sufficiently detailed description of a corporate officer's duty to disclose, but it failed to preserve this argument. During the charge conference, Taita made only a general objection to the

---

[14] *Bender v. Brumley*, 1 F.3d 271, 276-77 (5th Cir. 1993).

[15] *Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1287 (5th cir.), *cert. denied. sub nom.*, *Dickson Welding, Inc. v. Alexander & Alexander*, 506 U.S. 864 (1992).

[16] *Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991).

[17] *Id*. (citations omitted).

[18] *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 424 (5th Cir. 1990).

court's charge.  Taita objected "to every one of the numbered charges proposed and offered by Taita, one through 103, to the extent they were not incorporated in the final charges."  This general objection, coupled with 103 proposed charges, is not stated distinctly nor accompanied by an explanation, as Rule 51 requires.[19]

Taita's failure to properly object is not saved by the exception because its position was not previously made so clear to the district court that a subsequent objection would have been futile.[20]  Taita argues otherwise by pointing to a letter it sent the district court and to a pretrial conference, both of which discussed the duty to disclose issue.  More generally, Taita argues that the issue was such a "prominent feature" of the case that no objection was necessary.  If Taita's arguments prevailed, the exception would threaten to swallow the rule.  Presumably, everything a litigant wants in the charge is a "prominent feature" of the case, or part of the case's general theme.  However, jury charges require particular and exact language.  Rule 51 holds litigants to a difficult standard of error preservation for good reason.  It requires that objections be brought before the trial judge for a possible remedy at the trial court level, saving judicial resources.  There was no previous, clear objection by

---

[19] *See Russell*, 130 F.3d at 720 (holding that an objection "'to the extent that the Plaintiff's requested instructions were not given'" was insufficient to satisfy Rule 51).

[20] *Russell*, 130 F.3d at 720 (quoting 9A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2553 (2d ed. 1995)).

Taita. There was no prior intimation by the judge that no objection would be heard. There was no prior, emphatic ruling on the issue that would make a later objection futile.

We are persuaded that no adequate objection was leveled at the charge and we must review by the measure of plain error. Taita contends that the charge lacked detail needed by the jury in judging the duty to disclose. Perhaps so, but the result is not a clear and obvious error that seriously affects substantial rights and the fairness, integrity, or public reputation of judicial proceedings. We cannot find plain error.

B

Taita's second argument is that the district court erred by failing to give a sufficiently detailed instruction on a corporate actor's actual and apparent authority to bind a corporation. We disagree.[21]

Taita argues that by failing to give specific instructions about actual and apparent authority, "the district court made it far too easy for the jury to hold Taita accountable [for aiding and abetting the breach of loyalty]." Taita argues that the alleged bad acts should be attributed to BTR, a different corporation (that owned a 51% interest in Taita). If the jury knew the law of actual

---

[21] Westlake argues that Taita failed to preserve this point on appeal, but by (1) objecting specifically to the court's agency instruction, (2) submitting proposed instructions that cited relevant legal authority, and (3) considering a previous emphatic ruling by the judge that took an opposing stance, Taita preserved error.

10

and apparent authority, Taita argues, it could have attributed the bad acts to BTR because the actors had no authority to bind Taita.

Taita relies on *Thompson and Wallace of Memphis v. Falconwood Corp.*[22] In *Falconwood* this Circuit held that the district court erred in failing to give a detailed instruction on agency law. At issue was whether a corporation's employee bound the corporation when he secured a loan with false invoices.[23] Instead of giving a detailed instruction on agency law, the court only instructed that "in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority, delegated to him by the corporation or within the scope of his duties as an employee of the corporation."[24] The court held that, considering the difficulty of agency law, the court abused its discretion in failing to give a more detailed instruction.[25]

In response, Westlake argues, among other things, that the jury was adequately instructed. Specifically, Westlake argues that the jury was alerted of the need to distinguish between the various corporations. The instructions noted that the actors involved "can bind their *respective corporation* by their actions or conduct that

---

[22] 100 F.3d 429 (5th Cir. 1996).

[23] *Id*. at 434.

[24] *Id.*

[25] *Id.*

11

are related to or necessary for the performance of their duties." Westlake interprets this language as instructing the jury that "it could hold liable only the corporation on behalf of which the individual was acting." Finally, it argues that the general instruction on Westlake's burden of proof was sufficient to instruct the jury on its burden to prove the authority of Taita's actors.

Viewing the charge as a whole, Taita's argument must fail. Taita's concern is being held liable for the acts of BTR. Even assuming the primary portion of the charge dealing with agency is insufficient, a later portion of the charge ensures that the jury was adequately guided in its deliberations. The court instructed the jury that if it found that the Taita-appointed officers breached their fiduciary duties by not divulging information during board meetings, "you must further consider whether *Taita, through the actions of its own officers and/or directors*, knowingly joined with or participated in that breach of loyalty." It was instructed further that if it found such a breach, it "must also find Taita liable (or responsible) for that breach of loyalty." This language focused the jury on the fact that it must find Taita liable for the acts, not BTR. The identities of the two companies and their actors were probably confusing because of the overlapping actors between the two companies. But with the arguments from the lawyers and the context of trial, the instruction was clear enough. It is

12

at least not so unclear as to create "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[26]

The *Falconwood* case, while supportive of Taita's argument, is distinguishable. First, jury instructions must vary to fit the particular facts of each case. Although the instructions in *Falconwood* were insufficient for its facts, they may be sufficient in response to another set of facts. Second, because the case dealt with an alleged rogue agent of a corporation, the jury needed a detailed explanation of when an individual may bind a corporation. Here, on the other hand, the actors are the same; the only question is which corporation must account for the acts. Taita attempted to distance itself from BTR throughout the case. This clearly alerted the jury of the attribution issue. The instructions ensured that the jury face and answer this question directly. Accordingly, the charge was not erroneous.

C

Taita's third argument is that the trial court erred in instructing the jury that it could hold Taita liable for aiding and abetting breach of fiduciary duty without finding Westlake damaged in any way. We agree.[27]

---

[26] *Mijalis*, 15 F.3d at 1318.

[27] Westlake argues that Taita failed to preserve its objection by insufficiently explaining its basis. We disagree. Although Taita's oral objection was unclear as to its basis, the proposed

13

The Delaware Supreme Court makes clear that one must show damages as an element of aiding and abetting breach of fiduciary duty.[28]  Having failed to include an essential element of the claim, the instructions provided insufficient guidance to the jury on Westlake's counterclaim.  Under Delaware law, damages are a required element of an aiding and abetting cause of action.  *Gotham Partners, L.P. v. Hallwood Realty Partners*[29] and *Malpiede v. Townson*,[30] two Delaware Supreme Court cases, state that a plaintiff must show that "damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary."[31]

---

instruction submitted by Taita apprised the judge of the objection and its basis.  A submitted instruction does not necessarily preserve error.  However, a submitted instruction can preserve error if it makes one's "position sufficiently clear to the court to satisfy Rule 51's objection requirement."  *Kelly*, 61 F.3d at 361.

Taita's proposed instruction made its position clear:  "One of [the elements of aiding and abetting a breach of fiduciary duty] requires that the person alleging such a breach prove that damages resulted to them as a result of the concerted action of the fiduciary and non-fiduciary.  Thus, no damages should be awarded to Westlake if they do not establish any damage, harm or loss to themselves – Westlake – as a result of an alleged breach."  Taita's proposed instruction, along with the oral objection, provided sufficient clarity and legal support to alert the court of the grounds of the objection.

[28] The parties agree that Delaware law controls Westlake's aiding and abetting counterclaim.

[29] 817 A.2d 160 (Del. 2002).

[30] 780 A.2d 1075 (Del. 2001).

[31] *Gotham Partners*, 817 A.2d at 172; *see also Malpiede*, 780 A.2d at 1096.

14

Westlake cites no post-*Gotham* or post-*Malpiede* authority to support its position. Instead, it argues that aiders and abettors may be required to disgorge the profits resulting from the aiding and abetting, citing *Nash v. Schock*,[32] an unpublished opinion. However, this case predates *Gotham*, and deals with restitution and unjust enrichment, which were not pled in this case.

Considering that the jury was not instructed on an essential element of aiding and abetting breach of fiduciary duty, the jury was insufficiently guided in its deliberations. Therefore, the only question is whether the error "could not have affected the outcome of the case."[33] Taita argues that because the jury award was based on disgorging its profits, and not on any harm suffered by Westlake, the improper jury charge affected the outcome of the case. Westlake responds that the attorney's fees they incurred in defending the lawsuit constitute harm. Westlake's argument does not account for the fact that the jury did not consider an essential element of the claim. The jury award on Westlake's counterclaim must be vacated.

Because Westlake presented no evidence of any injury resulting from Taita's aiding and abetting breach of fiduciary duty, we do not remand this counterclaim. Westlake chose to proceed with the aiding and abetting counterclaim on a disgorgement theory, likely

---

[32] No. 14721-NC, 1998 WL 474161 (Del. Ch. July 23, 1998).

[33] *Mijalis*, 15 F.3d at 1318 (quoting *Bender*, 1 F.3d at 276-77).

because it knew it could not show any injury. The disgorgement theory failed, and there is no evidence of injury to Westlake as a result of Taita's aiding and abetting breach of fiduciary duty. Accordingly, we render judgement in favor of Taita on Westlake's aiding and abetting counterclaim.

Taita argues further that in addition to tainting the aiding and abetting counterclaim, the erroneous instruction also taints Westlake's use of aiding and abetting breach of fiduciary duty as an affirmative defense. Without a finding of damages to Westlake from the aiding and abetting, the argument goes, it cannot be used as an affirmative defense and this Court must remand Taita's contract claim as well.

We need not reach this argument because of the additional finding by the jury that Taita defrauded Westlake. Even assuming that the error in misstating the elements of aiding and abetting breach of fiduciary duty tainted both Westlake's claim and its affirmative defense, we must uphold the verdict if the error "could not have affected the outcome of the case."[34] The fraud claim was based, like the breach of fiduciary duty, in part on the allegation that Taita fraudulently induced Westlake into entering into the lower-priced contracts. Taita's fraudulent inducement resulted in the price-discounts Taita claimed in its breach of contract action. The jury found that Taita defrauded Westlake through this conduct,

---

[34] *Mijalis*, 15 F.3d at 1318 (quoting *Bender*, 1 F.3d at 276-77).

16

and this finding supports the invalidity of Taita's breach of contract claim.

IV

We REVERSE the judgment's award to Westlake on its aiding and abetting counterclaim and RENDER judgment on that counterclaim in favor of Taita.  We AFFIRM the remaining portions of the judgment.

17