United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 03-40776
Summary Calendar

---

ALL FREIGHT SYSTEMS,

Plaintiff,

KEN POWERS,

Intervenor Plaintiff-Appellant,

VERSUS

CASSANDRA JAMES, ET AL.,

Defendants,

CHARLES JOHNSON; WILLAMETTE INDUSTRIES, INC.,

Defendants-
Intervenor Defendants-
Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas
m 4:00-CV-437

---

Before SMITH, DEMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge.[*]

All Freight Systems, which was Ken Powers's employer, sued Cassandra James, Charles Johnson, and Willamette Industries ("Willamette"); Powers intervened as plaintiff. The suit resulted from a car accident in which James hit a pool of standing water while driving under drizzly and foggy conditions.

James's van hydroplaned, slid into the median, and rolled over several times, eventually resting on its side in the middle of northbound traffic. James was assisted out of her car, which was left with its black undercarriage facing south. Troy Johnston, a witness, testified that there was a hill preceding the place where the van had settled. Because of this, Johnston ran to the south to attempt to prevent oncoming traffic from running into the van.

The area were the van lay was dark, so approaching drivers could not see it. Johnson, a driver for Willamette, approached the obstruction caused by the van and was unable to avoid impact. Freddy Walden, another witness, testified that from his vantage point he saw nothing that Johnson could have done to avoid the wreck. After the collision, Johnson's truck went across the median and came to rest blocking southbound traffic. Immediately, Powers collided with Johnson's trailer, injuring Powers.

At the jury trial, Johnson's vision was brought into question by the plaintiffs. Records from Johnson's DOT examinations from 1980 through 1998 showed that his vision was 20/20 throughout this period. Furthermore, six weeks after the accident, he received another DOT physical examination that did not show a need for corrective lenses. Dr. Karanges, who performed a court-ordered independent DOT physical examination on Johnson, found that Johnson had 20/30 vision in his left eye and 20/40 vision in his right eye. Karanges also testified that Johnson had an overall visual acuity of 20/25 using both eyes, although this is not determinative of Johnson's ability to satisfy DOT requirement for commercial drivers.

Plaintiffs requested, but did not receive, a negligence *per se* jury instruction regarding Johnson's alleged failure to meet vision standards for commercial drivers. Plaintiffs did not object to the refusal to instruct, nor did they move for judgment as a matter of law ("j.m.l.") at the close of the evidence or before submission of the case to the jury.

Plaintiffs state that the district court failed in its gate-keeping function by allowing Karanges to testify concerning Johnson's vision. Plaintiffs also contend that the failure to give the negligence *per se* instruction is plain error. Next, plaintiffs allege that trial counsel was ill, and this was the reason for the failure to object to the lack of an instruction. Furthermore, plaintiffs believe that attorney misconduct prejudiced the proceedings, so they are entitled to a new trial. Finding no error, we affirm.

I.

Evidentiary questions are reviewed for abuse of discretion. *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 116 (5th Cir. 1997).

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Even if a court improperly admits evidence, the judgment must be affirmed unless the ruling affects substantial rights of the complaining party. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir.), *cert. denied*, 124 S. Ct. 180 (2003).

Consequently, plaintiffs' argument that Karanges was improperly allowed to provide testimony regarding Johnson's vision is without merit. The district court was in a better position to decide the admissibility of testimony concerning Johnson's ability to meet the requirements of a commercial driver. Moreover, the ruling did not substantially affect plaintiffs' rights.

## II.

Plaintiffs allege that it was plain error not to include a negligence *per se* instruction in the jury charge. There are three requirements to challenge jury instructions. First, the appellant must show that viewed as a whole, the charge creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003). Second, even if there is error, we will not reverse if the error "could not have affected the outcome of the case." *Id.* Third, the appellant must show that the proffered instruction correctly stated the law. *Id.* Perfection is not required if the instructions given were generally correct and any error was harmless. *Id.*

This standard provides the district court with great latitude. *Id.* In reviewing instructions, we consider whether the jury was misled in any way and whether it understood the issues. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 588 (5th Cir. 1985). Error in the charge is reversible only if, in the light of the entire record, it was reasonably calculated to and probably did cause the rendition of an improper verdict. *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995).

Negligence *per se* is a concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonable and prudent person. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). For negligence *per se*, there must be (1) a violation of a legislative enactment, (2) that is unexcused. *Parrott v. Garcia*, 436 S.W.2d, 897 (Tex. 1969). Negligence *per se* provides only a way of proving duty and breach of duty, and causation and damages must still be established. *Id.*

Thus, the plaintiff must still prove proximate causation, *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex. 1987), which includes the elements of cause in fact and foreseeability, *Exxon v. Quinn*, 726 S.W.2d 17, 21 (Tex. 1987). To be a cause-in-fact of the accident, a potential tortfeasor's acts or omissions must have been substantial factors in causing the accident. *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 114 (Tex. App.SSBeaumont 2001, pet. denied). Specifically, the acts or omissions must be factors without which the accident would not have occurred. *Id.* The resolution of conflicting evidence as to proximate cause and negligence is a matter for the jury. *Meadows & Walker Drilling Co. v. Phillips*, 417 F.2d 378, 383 (5th Cir. 1969).

The substantive law of Texas defines an unavoidable accident as "an event not proximately caused by the negligence of any party to it." *Reinhart,* 906 S.W.2d at 472. Similarly, the purpose of the sudden emergency doctrine instruction is to ensure that the jury will understand that it does "not necessarily

have to find that one of the other parties to the suit was to blame for the occurrence complained of." *Yarborough v. Berner*, 467 S.W.2d 188, 192 (Tex. 1971).

The instruction is most often used to inquire about the causal effect of some physical connection or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view. *Reinhart*, 906 S.W.2d at 472. Regarding the sudden emergency defense, "by the term emergency as used in this charge, is meant a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation." *Goolsbee v. Tex. & New Orleans R.R.*, 243 S.W.2d 386, 388 (Tex. 1951).

The mere fact that the legislature adopts a criminal statute does not mean that this court must accept it as a standard for civil liability. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 574, 278 (Tex. 1979). The threshold questions in every negligence *per se* case are whether the plaintiff belongs to the class that the statute was intended to protect and whether his injury is of a type that the statute was designed to prevent. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998). Then, the court must determine whether it is appropriate to impose tort liability for violation of the statute. *Id.* An indirect relationship between violation of a statute and the plaintiff's ultimate injury is a factor against imposing tort liability. *Id.* at 309.

In light of the conflicting testimony, the failure to include a negligence *per se* instruction did not ultimately affect the outcome of the case. The jury was not misled in any way, so its understanding of the issues was not

impaired. The circumstances of the accident illustrate that the road conditions, coupled with the position of James's van following her initial accident with the median, rendered a situation that falls into the category of an unavoidable accident or sudden emergency. This situation demonstrates that Johnson's allegedly impaired vision was not a substantial factor in the occurrences that caused Powers eventually to hit Johnson's tractor-trailer.

The matter of Johnson's vision was properly decided by the jury in light of the conflicting evidence presented by each side. Specifically, defendants presented evidence that the causal effect of drizzle and fog, combined with the sudden emergency of James's obstructing van, led to the accident, while the plaintiff's argued that Johnson's vision was the cause. Accordingly, the jury was properly left to determine the issue.

### III.

Plaintiffs contend they should not have to suffer for their counsel's error in failing to object to the jury instruction. Where a party fails to make timely objections to the proposed instructions and questions, the plain error standard of review applies. *J.C. Motor Lines, Inc. v. Trailways Bus Sys., Inc.,* 689 F.2d 599, 602 (5th Cir. 1982); *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 S.W.2d 781, 796 (5th Cir. 1973); FED. R. CIV. P. 51.

One may not complain of a jury instruction "unless that party objects thereto, stating distinctly the matter objected to and the grounds of the objection." *Taita Chem. Co.*, 351 F.3d at 667. Furthermore, submission of an alternative instruction does not necessarily preserve error for appeal. *Id.* One may not sit by without objection to rulings or instructions, and then after verdict and judgment, and when it is

4

too late for the court to change its rulings or charge, come forward with objections on appeal. *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378, 381 (5th Cir. 1969).

Even if the challenger proves the instructions misguided the jury, we reverse only if the erroneous instruction affected the outcome of the case. *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 365 (5th Cir. 2002). To meet this standard, a party must show "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Taita Chem. Co.,* 351 F.3d at 668. Litigants are held to a difficult standard of error preservation for good reason. *Id.* It requires that objections be made for a possible remedy at the trial court level, saving judicial resources. *Id.*

Reversal based on plain error is "not a run of the mill remedy." *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1032 (5th Cir. 1994). On plain error review, "the question before this Court is there was any evidence to support the jury verdict." *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 963 (5th Cir. 1998). If any evidence supports the verdict, the verdict will be upheld. *Id.* Therefore, so long as the court gives counsel a fair opportunity to object, we will listen to un-objected to rulings only in those handful of cases that can meet the exacting requirements of plain error. *Highlands Ins. Co.*, 27 F.3d at 1032.

Plaintiffs' argument that trial counsel was ill and that Powers should not be forced to pay

for counsel's failure to object instruction is unavailing. Therefore, we review for plain error the refusal to include a negligence *per se* instruction. As noted above, the lack of a jury instruction regarding negligence *per se* did not result in a miscarriage of justice.

A negligence *per se* jury instruction still would have left the jury to determine whether Johnson's controversial vision or the emergency situation in which he was presented on the morning of the accident was the cause of the collision. Accordingly, because plaintiffs' counsel was given fair opportunity to object and on plain error review there was evidence to support the verdict, there is no reversible error.

IV.

Plaintiffs admonish that, under the plain error standard, they are entitled to a post-verdict j.m.l. A claimant who bears the burden of proof and believes he is entitled to j.m.l. is required to move for j.m.l. before the case is submitted to the jury. *Flintco*, 143 F.3d at 968; FED. R. CIV. P. 50(a). Failing to move for j.m.l. at the close of the evidence and before submission to the jury results in waiver of the right to renew the motion under rule 50 (b). *Id.*; 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2536 (2d ed. 1995). If a party fails to move for j.m.l. under rule 50(a) on an issue at the conclusion of all the evidence, that party waives its right to file a renewed post-verdict rule 50(b) motion and its right to challenge the sufficiency of the evidence on that issue on appeal. *Flowers v. Regional Physician Sys.*, 247 F.3d 229, 238 (5th Cir. 2001).

A lawyer who never moves for j.m.l. must realize that a subsequent motion for j.m.l. can be granted only if plain error can be estab-

lished. *Flintco*, 143 F.3d at 963. The purpose of rule 50(a)'s requirement that a motion for j.m.l. specify the law and the facts on which the moving party relies "is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment. *Id.* Therefore, we will reverse only if the judgment complained of results in a manifest miscarriage of justice. *Id.*

Consequently, because plaintiffs failed to move for j.m.l. at the close of the evidence, our review of the denial of their subsequent motion for post-verdict j.m.l. is limited to plain error. Counsel's failure to seek j.m.l. limited defense counsel's opportunity to become aware of any possible shortcomings in the evidence they had presented. Furthermore, on plain error review there was sufficient evidence to support the verdict. Therefore, j.m.l. after the case had been submitted to the jury was properly denied.

V.

Plaintiffs requested a new trial by urging that opposing counsel's alleged misconduct at trial caused the jury to be influenced by passion and prejudice. Courts possess the inherent power "to vacate their own judgments on proof that a fraud has been perpetrated upon the court." *Fierro v. Johnson*, 197 F.3d 147, 152 (5th Cir. 1999) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991)). To establish fraud on the court, it is necessary to show an unconscionable plan or scheme designed to influence the court improperly in its discretion. *Id.*

Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. *Id.* Less serious conduct, such as non-disclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. *Id.* at 154 (citing *First Nat'l Bank v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)).

The trial court is in a superior position to gauge the prejudicial impact of counsel's conduct. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995). A new trial is warranted on the ground of attorney misconduct during the trial where the "flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Id.*

Review of the denial of a new trial is more limited than where one is granted. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421 431 (5th Cir. 2003). Our standard of review in this situation is "more deferential than our review of the denial of a motion for [j.m.l.]." *Id.* To warrant a new trial, improper comments by counsel must impair substantial rights and cast doubt on the verdict. *Bufford v. Rowan Co.*, 994 F.2d 155, 157 (5th Cir. 1993). The conduct must be such as gravely to impair the jury's calm and dispassionate consideration of the case. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985).

Plaintiffs rely on *Anheuser-Busch* and *Bufford* as illustrative of cases where attorney misconduct resulted in the necessity for a new trial. These cases, however, are distinguishable from the case at bar. In *Anheuser-Busch*, 69 F.3d at 350, plaintiff repeatedly lied to defendant and the court throughout discovery, opposition to discovery motions, the trial, and

evidentiary hearings concerning the existence of documents. In addition, plaintiff's counsel repeatedly and impermissibly elicited testimony regarding matters previously ruled inadmissible. *Id.* at 346. This misconduct was found to have sufficiently prejudiced the jury. *Id.*

Next, in *Bufford*, 994 F.2d at 157, defense counsel claimed that plaintiff's counsel, in his opening statement and consistently over the course of the proceedings, had sought to prosecute fraudulent claims. In addition, the trial judge, in the presence of the jury, had threatened plaintiff's counsel with jail. *Id.* This combination led to an unacceptable risk of a tainted verdict. *Id.* at 159.

In contrast, in this case, defendants' counsel's actions did not rise to the level of egregious conduct necessary to constitute fraud on the court. Specifically, plaintiffs cite testimony in which defendants' counsel mentions a police report, recounts the fact that plaintiffs' experts were being paid, notes that plaintiffs had also brought suit against James, and states that Powers had become unhappy with the doctors whom his lawyer helped him to find. These actions by counsel do not illustrate an unconscionable plan or scheme. Defendants' counsel's actions can be seen as zealous advocacy but did not rise to the level of impairing the consideration of the case by the jury. Therefore, a new trial was not warranted.

AFFIRMED.