Opinion issued March 10, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-00706-CV

———————————

Cernosek Enterprises, Inc.; CJN Investments,
Inc.; and Anthony Cernosek, Appellants

V.

City of Mont Belvieu;
Enterprise Products Operating, LLC; Mont Belvieu Caverns, LLC; and Enterprise
Texas Pipeline, Inc., Appellees



 



 

On Appeal
from the 344th District Court

Chambers
County, Texas



Trial Court Case No. 24222

 



 

 

O P I N I O N

          This
appeal arises out of a prior settlement agreement between appellees, the City
of Mont Belvieu and Enterprise Products Operating, LLC, Mont Belvieu Caverns,
LLC, and Enterprise Texas Pipeline, Inc. 
See City of Mont Belvieu v. Enter. Prods. Operating, LP, 222 S.W.3d 515
(Tex. App.—Houston [14th Dist.] 2007, no pet.). 
Appellants Cernosek Enterprises, Inc., CJN Investments, Inc., and
Anthony Cernosek, collectively, own Hill Lumber, which is located and does
business in the City of Mont Belvieu.[1]

          In 2005, Enterprise began
drilling within the City limits to create an underground hydrocarbon storage
facility.  Id. at 517.  Enterprise had a
drilling permit from the Texas Railroad Commission, but did not have City
permits.  Id. The City sued Enterprise, and Enterprise filed a plea to the
jurisdiction alleging that the trial court lacked subject‑matter
jurisdiction to overturn the Commission’s decision to issue a permit, which the
trial court granted.  Id. at 517–18.

          After the Fourteenth Court
of Appeals reversed the trial court, the City and Enterprise entered into a
July 2007 settlement agreement.  Among
other things, the settlement agreement required that Enterprise purchase, at
three times the tax value of the most recent tax appraisal, homes of people
located on the salt dome who resided there before an explosion that occurred in
the 1980s and who did not participate in the previous buyout offer.  See
Maranatha Temple, Inc. v. Enter. Prods. Co.,
893 S.W.2d 92, 95–96 (Tex. App.—Houston [1st Dist.] 1994, writ denied)
(discussing 1980s buyout).  Enterprise
also purchased City property such as the old city hall.  Excluded from the settlement agreement were
commercial entities and residents who moved to the area after the initial
buyout.  Finally, pursuant to the
settlement agreement, the City issued drilling permits to Enterprise for wells
that were previously permitted by the Railroad Commission.

          In June 2008, Hill Lumber
sued the City and Enterprise, alleging that they had knowingly violated Mont
Belvieu’s municipal ordinances—specifically, chapter 10 of the City Code,
regarding the issuance of permits, and chapter 25, the City’s zoning ordinance
regulating the drilling and subsequent operation of hydrocarbon storage wells—and
that the City had violated the Open Meetings Act[2] in entering into the settlement
agreement.  Hill Lumber claimed that
these violations gave rise to liability on the part of the City for due‑process
violations and inverse condemnation and gave rise to liability in tort on the
part of Enterprise for fraud, conspiracy, and breach of fiduciary duty.

          Specifically, Hill Lumber
contended that the City’s ordinances required the written consent of all
property owners within 2,500 feet of
a storage well site before drilling could be permitted and that two of the
wells the City had permitted Enterprise to drill were drilled within 2,500 feet
of Hill Lumber’s location without its written consent.  Hill Lumber also contended that the City gave
inadequate notice of the permits.  It acknowledges
that the City Council held a special meeting on July 16, 2007 to discuss in
public the City’s settlement agreement with Enterprise and that it gave three‑days
prior notice of that meeting.  It also
acknowledges that the City Council subsequently held a public meeting on July
23, 2007 at which the drilling permits were approved.  Hill Lumber does not deny that it had actual
notice of these meetings, but it contends that the notice of the drilling
permits was “not sufficient” because not all of the notice requirements in the
ordinances were satisfied.

          In its prayer, Hill Lumber
sought revocation of the well permits for the two wells drilled within 2,500
feet of its property, an order requiring Enterprise to remove all structures it
had built as a result of the permits and to shut down and plug the wells, a
declaratory judgment that the City had violated its ordinances, preliminary and
permanent injunctions against the drilling and operation of the wells, and
actual and exemplary damages against Enterprise.  However, although Enterprise drilled the two
wells within 2,500 feet of Hill Lumber’s location, the record does not reflect
that Hill Lumber actively pursued injunctive relief to stop the wells.

Both the City and Enterprise filed special exceptions, claiming Hill
Lumber had not alleged facts sufficient to show that the trial court had
jurisdiction over its claims.  The City
and Enterprise alleged that Hill Lumber had not shown that the ordinances Hill
Lumber claimed they had violated created a private cause of action.  Nor had it stated facts showing that it had
any particular individual interest in the issuance of the permits apart from a
general community interest.  The City and
Enterprise also alleged that Hill Lumber had not pleaded facts that showed the
City was not allowed to use the exceptions and waivers found in the ordinances,
which permitted the City Council to grant exceptions to its permitting
requirements at the request of an applicant “upon such conditions it determines
necessary to protect public health and safety.” 
They also pointed out that the City’s ordinances required that the City
consider the application at a city‑council meeting at which “anyone may
speak out for or against granting the application” for a permit and that Hill
Lumber had not stated facts showing that the July 16 and July 23 meetings were
not open meetings or that notice of the meetings was inadequate.  The City and Enterprise further alleged that
Hill Lumber had failed to show that it had standing to challenge the settlement
agreement on contract or tort grounds. 
The City also specially excepted to Hill Lumber’s pleadings of
violations of due process on the ground that Hill Lumber had not shown how it
had been deprived of due process, and it specially excepted to Hill Lumber’s
inverse­‑condemnation claim on the ground that it had failed to allege
how the well permits interfered with its use and enjoyment of its property
economically or how they affected the value of Hill Lumber or caused the severe
economic impact Hill Lumber claimed.

          Enterprise filed a plea to
the jurisdiction, contending that Hill Lumber had no standing to use the
lawsuit to enforce the municipal ordinances. 
The City filed a similar plea to the jurisdiction based on standing, and
it also asserted its immunity from suit. 
In November 2008, the trial court granted the City’s plea to the
jurisdiction and special exceptions, except on Hill Lumber’s claims for alleged
violations of the Open Meetings Act.  On
December 18, 2008, the trial court granted Enterprise’s plea to the
jurisdiction and special exceptions, holding that Hill Lumber could not amend
its petition to assert any valid claims or causes of action.  After Hill Lumber dismissed its remaining
Open Meetings Act claim against the City, the trial court signed a final
judgment in July 2009 dismissing with prejudice all of Hill Lumber’s claims.

The City’s Governmental Immunity

          In
issue one, Hill Lumber contends that the trial court erred in granting the
City’s plea to the jurisdiction based on governmental immunity.[3]  Governmental immunity from suit defeats a
trial court’s subject‑matter jurisdiction.  Tex.
Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has jurisdiction is a
question of law subject to de novo review. 
See Tex. Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849,
855 (Tex. 2002).

          Sovereign
immunity protects the State, its agencies, and its officials from lawsuits for
damages.  See Tooke v. City of Mexia,
197 S.W.3d 325, 331 n.11 (Tex. 2006); IT-Davy,
74 S.W.3d at 853–54; Gen. Serv. Comm’n v.
Little‑Tex Insulation Co., Inc., 39 S.W.3d 591, 594 (Tex. 2001); Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401, 405 (Tex.1997).  Under this
centuries‑old common-law doctrine, the sovereign is immune from liability
and also from lawsuits.  See IT-Davy,
74 S.W.3d at 853; Little‑Tex,
39 S.W.3d at 594; Fed. Sign, 951
S.W.2d at 405.  Immunity from liability
shields the State from judgments.  IT-Davy, 74 S.W.3d at 853; Little‑Tex, 39 S.W.3d at 594; Fed. Sign, 951 S.W.2d at 405.  Immunity from suit prohibits a suit against
the State unless the legislature grants consent.  Little‑Tex,
39 S.W.3d at 594.

          The
State’s sovereign immunity extends to various divisions of state government,
including agencies, boards, hospitals, and universities.  Tooke,
197 S.W.3d at 331; Wichita Falls Hosp. v.
Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  The appurtenant common‑law doctrine of
governmental immunity similarly protects political subdivisions of the State,
including counties, cities, and school districts.  Taylor,
106 S.W.3d at 694 n.3; see also Harris Cnty. v. Sykes, 136 S.W.3d 635,
638 (Tex. 2004).  A political subdivision
enjoys governmental immunity from suit to the extent that immunity has not been
abrogated by the legislature.  See IT-Davy,
74 S.W.3d at 853.

          A
political subdivision may contest a trial court’s subject‑matter
jurisdiction by filing a plea to the jurisdiction.  Jones,
8 S.W.3d at 638.  While a plea to the
jurisdiction is a procedural means for a political subdivision to contest
jurisdiction, the party suing the governmental entity has the burden to
establish consent to be sued.  Id.

          Hill
Lumber claims that the City is not entitled to governmental immunity from suit
for the following reasons: (1) the City acted ultra vires by not following its
own ordinances;[4]
(2) the City’s actions constitute a taking under Texas Constitution article I,
section 17; and (3) Local Government Code section 245.006 and Civil Practice
and Remedies Code section 37.006 expressly waive the City’s immunity from
suit.  See Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.006 (West 2008); Tex. Loc. Gov’t Code Ann. § 245.006 (West 2005).

          1.  Ultra‑Vires
Actions

          Hill
Lumber first argues that governmental immunity does not apply to the City
because it did not follow its own ordinances in issuing the permits.  It is true that when an official acts without
legal authority or fails to perform a purely ministerial act, the official’s
acts are ultra vires and a suit to require the official to comply with
statutory or constitutional provisions is not prohibited by sovereign
immunity.  City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex. 2009).  We need not decide whether the ultra vires
doctrine applies in this case, however, because Hill Lumber has not sued the
proper parties.

          Ultra
vires claims cannot be brought against the state, but must be brought against
officials in their official capacity.  Id. at 373; Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 596–98 (Tex.
App.—Austin 1991, writ denied) (discussing ultra vires exception and
differentiating between cases in which officials are sued and cases in which
state or governmental units are sued). 
Hill Lumber has sued the City directly, not the members of the City Council.  Accordingly, governmental immunity prohibits
the suit Hill Lumber has brought against the City.




          2.  Taking
Under Texas Constitution Article I, Section 17

          Hill
Lumber next argues that governmental immunity does not bar its inverse‑condemnation
claim under Texas Constitution article I, section 17.  See
Steele v. City of Houston, 603 S.W.2d
786, 791 (Tex. 1980) (article I, section 17 constitutes waiver of governmental
immunity for the taking, damaging, or destruction of property for public
use).  Because this is a regulatory‑taking
claim, rather than a physical‑taking claim, Hill Lumber must show that
the governmental action denies use of the property, renders the property
valueless, or unreasonably interferes with the property owner’s right to use
and enjoy the property.  Sheffield Dev. Co. v. City of Glenn Heights,
140 S.W.3d 660, 671–73 (Tex. 2004); City
of Dallas v. Blanton, 200 S.W.3d 266, 274 (Tex. App.—Dallas 2006, no pet.).

          Hill
Lumber’s appellate briefing does not cite to any specific allegations in the
record stating why it cannot use its property or stating how the City has
unreasonably interfered with its right to use and enjoy the property by issuing
a drilling permit.  Instead, Hill
Lumber’s live pleading merely alleges its “property value has been seriously
diminished, [its] property and lives (as well as the lives of employees and
customers) are at serious risk, [it] has lost business, and [its] general
welfare and ability to enjoy a peaceable community [has] been seriously
harmed.”  These allegations do not state
specific facts evincing a taking by the City, and thus the trial court properly
granted the plea to the jurisdiction on this ground.  City of
Dallas, 200 S.W.3d at 274, 279 (discussing level of evidence necessary to
demonstrate regulatory taking).

          3.  Express
Waiver of Immunity

          Finally,
Hill Lumber claims that the City is not entitled to governmental immunity
because two statutes expressly waive immunity—Local Government Code section
245.006 and Civil Practice and Remedies Code section 37.006.  Local Government Code chapter 245 generally
requires regulatory agencies to determine permit applications solely on the
basis of any orders, regulations, ordinances, rules, expiration dates, or other
properly adopted requirements in effect at the time the original permit
application is filed.  Tex. Loc. Gov’t Code Ann. § 245.002(a) (West 2005).  Chapter 245 (1) allows enforcement through
mandamus or declaratory or injunctive relief and (2) waives a political
subdivision’s immunity from suit for action under the chapter.  Tex.
Loc. Gov’t Code Ann. § 245.006 (West 2005).

          Even
were we to assume that chapter 245 applies to the specific permits in this
case, Hill Lumber is not entitled to the waiver of immunity from suit because
it is not the permit applicant.  Section
245.006 itself does not specify who may bring a suit, but section 245.002
discusses “[r]ights to which a permit applicant is entitled under this
chapter.”  Tex. Loc. Gov’t Code Ann. § 245.002(a–1) (West 2005).  Unless a statute is ambiguous, we construe a
statute as written, using the literal text. 
Alex Sheshunoff Mgmt. Servs., L.P.
v. Johnson, 209 S.W.3d 644, 651–52 (Tex. 2006).  Nothing in chapter 245 suggests that section
245.006 waives governmental immunity and allows anyone other than a permit
applicant to have the right to file suit.

          Hill
Lumber last relies on the Uniform Declaratory Judgments Act to waive
governmental immunity from suit: “In any proceeding that involves the validity
of a municipal ordinance or franchise, the municipality must be made a party .
. . .” Tex. Civ. Prac. & Rem. Code
Ann. §
37.006(b) (West 2008).  Here, no one
challenges the validity of Mont Belvieu’s ordinances, but rather the City’s
actions under the ordinances.  See City
of El Paso, 284 S.W.3d at 373 n.6.

          We
hold that the trial court did not err in granting the City’s plea to the
jurisdiction based on governmental immunity, and we overrule issue one.  Because the City’s plea to the jurisdiction
was properly granted on governmental immunity, we do not reach Hill Lumber’s
remaining claims against the City in issues two and three concerning standing.

Hill Lumber’s Standing to Allege Its Claims
Against Enterprise

          In
issues two and three, Hill Lumber contends that the trial court erred in
granting the City’s plea to the jurisdiction based on lack of standing.  Issue two relates solely to Hill Lumber’s
statutory standing to sue the City, and we do not reach it.  In issue three, Hill Lumber asserts it has
common‑law standing to sue Enterprise for negligence, gross negligence,
fraud by nondisclosure, and nuisance claims.

          The
general test for standing requires that there be a real controversy between the
parties which will actually be determined by the judicial declaration
sought.  Tex. Ass’n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 447 (Tex. 1993).  Standing is a component of subject‑matter
jurisdiction, which requires a pleader to allege facts that affirmatively
demonstrate the court’s jurisdiction to hear the case.  Id. at 446.  Standing also requires
some interest peculiar to the person individually and not as a member of the
public.  Hunt v. Bass, 664 S.W.2d
323, 324 (Tex. 1984); Lobrado v. Cnty. of El Paso, 132 S.W.3d 581,
586–87 (Tex. App.—El Paso 2004, no pet.).[5]  The general rule applies unless standing has
been statutorily conferred on the plaintiff. 
Williams v. Lara, 52 S.W.3d 171, 178 (Tex. 2001); Labrado,
132 S.W.3d at 587.  When a private
cause of action is alleged to derive from a constitutional or statutory
provision, the duty of the courts is to ascertain the drafters’ intent.  Brown
v. De La Cruz, 156 S.W.3d 560, 563 (Tex. 2004).  In
such a case, the statute itself serves as the basis for the analysis.  Everett v. TK-Taito, L.L.C., 178
S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.).  The courts will not imply that a
constitutional or statutory provision gives rise to a private cause of action
unless the drafters’ intent is clear from the language.  See
Brown, 156 S.W.3d at 566.

          On
appeal, Hill Lumber does not substantively brief any of the common‑law
elements of its negligence, gross negligence, fraud by nondisclosure, and
nuisance claims.  Instead, it argues that
these are “common law claims based on the duties created in the ordinances,”
that it has suffered “actual harm caused by [Enterprises’] violations of
statutes and ordinances,” and that it “seeks recovery of damages caused by the
City and Enterprise’s tortious permitting, drilling and operating of [the two
wells], contrary to the direct, clear, and unambiguous requirements set forth
in the City Code.”  Enterprise argues,
and we agree, that whether the City’s ordinances create duties that can be the
basis of private causes of action, regardless of whether they sound in tort, is
a question of law.  See Brown, 156 S.W.3d at 563
(discussing private cause of action based on statute); Perry v. S.N., 973 S.W.2d 301, 309 (Tex. 1998) (discussing
application of negligence per se based on criminal statute).

          Although
Hill Lumber cites cases discussing other statutes,[6] the only substantive legal
argument directly related to the City ordinances that Hill Lumber makes on
appeal is the following from its reply brief:

The proper test to see if a
duty can be established by statute is set forth in Perry v. S.N., where the Supreme Court noted six factors to use in
determining if implementation of a statutory duty is proper.  Perry
v. S.N., 973 S.W.2d 301, 305 (Tex. 1998). 
Here, each of the factors supports implementation of a statutory duty
against Enterprise: (1) the statute simply supplies the standard of care
regarding fraud, negligence, and nuisance by imposing an absolute distance
restriction not only for permit issuance, but also for the existence of any
wellhead of any storage well, see
City Code § 10‑14; (2) the City Code states clearly and unambiguously
that the location cannot be within 2,500 feet of Hill Lumber’s commercial
property without Hill Lumber’s prior written consent, see City Code § 10‑14; (3)
because the statute is narrowly drawn to only effect [sic] hydrocarbon storage
wells in the City, it is highly unlikely than an unsophisticated party could be
subject to liability without first checking the statutory requirements; (4)
Enterprise’s unauthorized wells expose them to relatively small liability
compared to the value of drilling a hydrocarbon storage well, and the potential
damage to the surrounding land; and (5) Enterprise’s unauthorized drilling and
operation of the well directly caused Hill Lumber’s injuries, as contemplated
by the statute, see City Code § 10‑63(A) (“drilling or operation of a well . . .
might be injurious or disadvantageous to the City or to its inhabitants,
especially adjacent property owners.”). 
Each Perry factor supports the conclusion that the ordinances are the
proper ground to create statutory duties with which Enterprise is required to
conform its actions.

 

We hold that Hill Lumber has not
adequately briefed this issue, and we decline to undertake a detailed de novo
examination of each of the city ordinances to determine whether they create
duties that can be the basis of private causes of action.  See
Tex. R. App. P. 38.1(h) (“The
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.”).

We observe, however, that Hill Lumber
has utterly failed to show that the ordinances it alleges were violated were
intended to provide a person in its position with a private cause of action,
nor could it.  See Brown, 156 S.W.3d at 563. 
The City’s general purpose in setting out the permitting procedures and
zoning ordinances, stated with specificity in several places in both chapter 10
and the zoning ordinance, is to regulate drilling operations, site
requirements, and land use in the public interest.  The City enforces these requirements and
provides penalties, including criminal penalties in the case of zoning
violations, for their abuse.  See Mont
Belvieu, Tex., Code §§ 10‑11, 10‑14, 10‑62, 10‑64,
10‑66, 10‑68, 25‑1 to 25-100. 
Nowhere do the ordinances cited by Hill Lumber express the legislative
intent to provide a private cause of action to citizens for a violation of
either the permitting regulations or the zoning provisions.  Therefore, Hill Lumber has failed to establish
that it has standing to pursue a claim against Enterprise under the language of
these ordinances.  See Everett, 178 S.W.3d at 850.

Hill Lumber’s argument, to the extent
it makes one—that its satisfaction of the Perry
factors justifies this Court’s determination that it is entitled to a permanent
injunction enjoining Enterprise’s drilling and operation of the two wells
permitted to be drilled within 2,500 feet of its property, requiring plugging
of the wells and removal of all structures, and awarding both actual and
exemplary damages against Enterprise because of injuries allegedly resulting
from the failure of the City and Enterprise to follow the City’s permitting and
zoning ordinances—is likewise unavailing. 
In Perry, parents brought
negligence per se actions under Family Code section 261.109(a), which requires
the reporting of child abuse, against persons who had failed to report child
abuse they had allegedly witnessed at a day‑care center.  Perry,
973 S.W.2d at 302–04; see Tex. Fam. Code Ann. § 261.109(a) (West Supp. 2010).  The supreme court pointed out that the
existence of a legally cognizable duty is a prerequisite to all tort
liability.  Perry, 973 S.W.2d at 304.  It
held that the threshold questions in every negligence per se action seeking to
impose liability for the defendant’s violation of a statute are (1) whether the
plaintiff belongs to the class the statute was intended to protect and (2)
whether his injury is of a type the statute was designed to prevent.  Id.
at 305.  The court further held that
although the plaintiffs were within the class of persons the child‑abuse‑reporting
statute was meant to protect and suffered the kind of injury the Legislature
intended the statue to prevent, this did not end the inquiry.  Id.
at 305.

The Perry court set out a number of factors to aid courts in
determining whether tort liability should be imposed for the violation of a
statute.  See id. at 305–06. The factors the Perry court stated should be considered in deciding to apply
negligence per se are: (1) whether the statute merely codifies a pre-existing
common‑law duty “so that the statute’s role is merely to define more
precisely what conduct breaches that duty”; (2) whether the statute puts the
public on notice by clearly defining the required conduct; (3) whether applying
negligence per se would create liability without fault; (4) whether negligence
per se would result in ruinous damages disproportionate to the seriousness of
the statutory violation, a result it found particularly troubling when
“combined with the likelihood or ‘broad and wide‑ranging liability’ by
collateral wrongdoers”; and (5) whether the plaintiff’s injury is a direct or
indirect result of the violation of the statute by a third party.  Id.
at 306–09.

Here, while Hill Lumber, as a
property‑owner within the City, is among the persons the City intended to
protect by regulating storage‑well drilling and operation, its claims
satisfy none of the Perry factors for
applying the law of negligence per se: (1) there is no common‑law duty running
from either the City or Enterprise to Hill Lumber not to drill a well within
2,500 feet of its property, rather such a duty is purely statutory; (2) while
the ordinances clearly define the requirements for obtaining drilling permits,
the same ordinances that Hill Lumber claims were violated clearly provide for
the City to make exceptions in the public interest; (3) extending Hill Lumber’s
claims of negligence per se beyond the City, which allegedly violated its
ordinances by permitting Enterprise to drill, to Enterprise, which drilled
wells pursuant to permits granted it by the State and by the City pursuant to
the settlement agreement, would create liability to Hill Lumber on Enterprise’s
part without Enterprise’s fault; (4) allowing a single property‑owner in
the municipality with property within 2,500 feet of a storage well to hold a
publicly approved drilling operation hostage to that property owner’s written
consent to the well on pain of the permit holder’s being permanently enjoined
from drilling and operating the permitted wells and being required to cease
operations, plug the wells, remove all structures, and pay that property owner
actual and exemplary damages because of the City’s and the permit holder’s
violation of municipal ordinances would plainly result in ruinous damages
disproportionate to any damage suffered by Hill Lumber (none of which was
specifically identified) and would create “‘broad and wide-ranging liability’
by collateral wrongdoers”; and (5) any damage caused to Hill Lumber’s property
values by the City’s or Enterprise’s violation of municipal ordinances would be
an indirect result of the violation of the ordinances.  As in Perry
itself, Enterprise’s alleged conspiracy with the City to violate municipal
ordinances fails to justify the imposition on Enterprise of tort liability to
Hill Lumber under the Perry factors.

          Finally,
we note that Hill Lumber has not demonstrated that it has standing to sue
either Enterprise or the City because it has not shown that it has an interest peculiar to it individually and not
as a member of the public. See Hunt, 664 S.W.2d at 324.  In its live pleadings, Hill Lumber contends
that the wells “destroy the peace and general welfare of the nearby community”
and “decrease the property values of the businesses and residences near
them.”  While Hill Lumber alleges damage
to the community, it has not demonstrated that this injury affects it in some
special or unique way that is different from the injury suffered by the
community at large.  Lobrado, 132
S.W.3d at 586–87.

          We
hold that the trial court did not err in granting Enterprise’s plea to the
jurisdiction based on standing, and we overrule issue three.

Enterprise’s Special Exceptions

          In
issue four, Hill Lumber argues that the trial court erred in granting
Enterprise’s special exceptions.  In
light of our holding that the trial court did not err in granting Enterprise’s
plea to the jurisdiction based on standing, the trial court’s grant of special
exceptions is relevant only to the extent that the order stated, “Nor can [Hill
Lumber] amend the petition to assert any valid causes of action against
[Enterprise].”  See Tex. Ass’n of Bus., 852 S.W.2d at 447 (“A review of only
the pleadings to determine subject matter jurisdiction is sufficient in the
trial court because a litigant has a right to amend to attempt to cure pleading
defects if jurisdictional facts are not alleged.  See
Tex. R. Civ. P. 80.”).  Hill Lumber’s argument on this issue is that
its pleadings were not defective, an argument we have determined to the contrary.  It does not argue on appeal that the trial
court erred in not allowing it to replead. 
Accordingly, we overrule issue four.

Conclusion

          We
affirm the trial court’s judgment.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and Bland.











[1]           In this opinion, we will
refer to the parties as follows: (1) Enterprise Products Operating, LLC, Mont
Belvieu Caverns, LLC, and Enterprise Texas Pipeline, Inc. collectively as
“Enterprise”; (2) Cernosek Enterprises, Inc., CJN Investments, Inc., and
Anthony Cernosek collectively as “Hill Lumber”; and (3) the City of Mont
Belvieu as “the City.”

 





[2]           Tex.
Gov’t Code Ann. §§ 551.001–.146 (West
2004 & Supp. 2010).





[3]
          The
parties use the term “sovereign immunity,” as opposed to the proper term
“governmental immunity.”  The doctrines
of sovereign and governmental immunity are related but distinguishable.  Sovereign immunity protects the State itself
and various divisions of state government, while governmental immunity protects
political subdivisions, including counties, cities, and school districts.  See
Ben Bolt–Palito Blanco Consol. Indep.
Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund, 212
S.W.3d 320, 324 (Tex. 2006)

 





[4]           Mont
Belvieu, Tex., Code §§ 10‑11, 10‑14, 10‑62, 10‑64,
10‑66, 10‑68.  The ordinances
were not introduced into the trial‑court record, but were merely attached
to pleadings.  See Metro Fuels, Inc. v. City
of Austin, 827 S.W.2d 531, 532 (Tex. App.—Austin 1992, no writ) (discussing
how to take judicial notice of municipal or county ordinance and make ordinance
part of appellate record). The fact that a document is physically present in
the clerk’s record as an attachment to another document does not make the
attached document a proper part of the appellate record.  See
Atchison v. Weingarten Realty Mgmt. Co.,
916 S.W.2d 74, 77 (Tex. App.—Houston [1st Dist.] 1996, no writ).





[5]           See also Wilkinson v.
Dallas/Fort Worth Int’l Airport Bd., 54 S.W.3d 1, 13 (Tex. App.—Dallas 2001,
no pet.) (holding that allegation that governmental activity caused diminution
in value or marketability of property is insufficient to state claim for
inverse condemnation under Texas Constitution; only special injuries to
property not suffered by community in general are compensable).





[6]         E.g., SCI Tex. Funeral
Servs., Inc. v. Hijar, 214 S.W.3d 148,
153 (Tex. App.—El Paso 2007, pet. denied) (discussing alleged violations of
Federal Trade Commission rules adopted pursuant to 15 U.S.C. § 57a(a)(1)
2006)).